JOHN H. RIKER, as Sole Surviving Executor, etc., Respondent, v. SAMPSON S. LEO, Impleaded, etc., Appellant.

The will of S., an attorney, created a trust for the benefit of a nephew during his life. Upon his death the executors were directed to pay the trust fund "to any responsible corporation" in the city of New York existing at the time of such death, "whose permanent fund is established by its charter for the purpose of ameliorating the condition of the Jews in Jerusalem, Palestine, * * * the income to be used in promoting among them education, arts and sciences, and by learning them mechanical and agricultural vocations." In case such disposition should fail, the testator gave said trust fund to the children of a niece. Prior to the testator's death and at the time of the death of the nephew,

defendant, the N. A. R. Society was in existence. The testator was one of its incorporators, and at the time of his death its president. Its object, as declared in its charter, is to contribute " to the relief of indigent Jews in Palestine." *Held,* the facts justified a finding that said defendant was not the particular donee intended by the testator, but the gift was to any corporation which could answer the description given; that the said gift was not absolute, but imposed upon the taker the performance of certain duties through the means of the income from the fund; that an educational, not a charitable corporation was intended; that said defendant did not answer the description and had not a legal capacity to perform the specified duties, and so was not entitled to the fund; also that as it appeared that there was no corporation answering the description, defendant S., the only child of the niece named, was entitled thereto.

*It seems* that if at the death of the testator's nephew there had been more than one corporate society in existence answering the description, the gift would be void for uncertainty.

*N. Y. Institution for Blind* v. *How's Executors* (10 N. Y. 84) distinguished.

(Argued May 2, 1889; decided June 4, 1889.)

APPEAL by defendant Sampson S. Leo from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 18, 1888, which affirmed a judgment in favor of defendant, the North American Relief Society, entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a judicial construction of the will of Sampson Simson, deceased.

The material facts are stated in the opinion.

*John E. Parsons* for appellant. The North American Society does not meet the requirements of the will. (*People ex rel. Blossom* v. *Nelson,* 46 N. Y. 477; *People of State of New York* v. *Gunn,* 96 id. 317; *Gram* v. *German Society,* 36 id. 161, 162; Laws of 1848, chap. 319, p. 447.) The accumulation of permanent funds by benevolent, etc., societies, unless where specially authorized, is not only not in accordance with the law, but is against the spirit of the institutions of the country. (*Iseman* v. *Myres,* 26 Hun, 651; *Manice* v. *Manice,* 43 N. Y. 303; *Adams* v. *Perry,* 43 id. 487, 500; *Matter of Will of O'Hara,* 95 id. 403, 417.) A devise or

bequest for purposes which are both charitable and benevolent
is altogether bad. (*Morice* v. *Bishop of Dunham*, 9 Ves.
399, 405; *James* v. *Allen*, 3 Merivale, 17; *Mitford* v. *Rey-
nolds*, 1 Phillips, 185, 190; *Nash* v. *Morley*, 5 Beav. 177,
183; Perry on Trusts, § 692.) For a testator to say "I desire"
a legatee to use a legacy in a particular way makes the expressed
desire a condition of the will. If the legatee cannot comply
with the desire, it cannot take the legacy. (*Colton* v. *Colton*,
127 U. S. 300; *Matter of Will of O'Hara*, 95 N. Y. 403;
Perry on Trusts, § 112.) The bequest was bad for uncertainty.
(*Holland* v. *Alcock*, 108 N. Y. 312, 323; *Bascom* v. *Albert-
son*, 34 id. 583, 596; Perry on Trusts, § 254.) The bequest
was indefinite, not only because there was no definite donee,
but further for the reason that the purposes specified were too
general and indefinite. (*Williams* v. *Kershaw*, 5 L. J. [N. S.]
84; *Kendall* v. *Granger*, 5 Beav. 300; *In re Jarman*, Eng.
L. R., 8 Ch. Div. 584; *Levy* v. *Levy*, 33 N. Y. 97, 104;
*Goddard* v. *Pomeroy*, 36 Barb. 546, 548; *Beekman* v. *People*,
27 id. 260; *Flanagan* v. *Flanagan*, 8 Abb. N. C. 413; *Beek-
man* v. *Bonsor*, 23 N. Y. 298; *Owens* v. *Missionary Society*,
14 id. 380.) A clause permitting executors to appoint to
works of benevolence is bad. (*Prichard* v. *Thompson*, 95
N. Y. 76; *Matter of Abbott*, 3 Redf. 303.)

*Adolph L. Sanger* for respondent. The disputed bequest
was not void for uncertainty. (*Powers* v. *Cassidy*, 79 N. Y.
602; *Prichard* v. *Thompson*, 95 id. 76; *Holland* v. *Alcock*,
108 id. 312, 321, 322) It is not necessary, in order to entitle
the defendant corporation to take, that the bequest should be
made to it by its corporate name, if the language of the will
sufficiently describes it by its character, office or duty. It is
only requisite that there be such a specification or description
of the object of the bequest as will show the intention of the
testator and will make the legatee definitely ascertainable
when the right to receive the legacy accrues. (*Trustees, etc.*,
v. *Cosgrove*, 4 Hun, 365, 367, 368; Wigram on Wills, 108;
*Shipman* v. *Rollins*, 98 N. Y. 311, 328; *Coit* v. *Comstock*,

51 Conn..352; *Holmes* v. *Mead*, 52 N. Y. 343; *Lefevre* v. *Lefevre*, 59 id. 434; *In re Wehrane*, 40 Hun, 542; 110 N. Y. 678; *N. Y. Inst.* v. *Howe*, 10 id. 84.) Where the intention is apparent, the court must give such a construction as will support the intent of the testator. (*Pond* v. *Bergh*, 10 Paige, 152; *Phillips* v. *Davies*, 92 N. Y. 204.) There is nothing in the language of article 5 to warrant the conclusion that the testator intended that no society could become entitled to the bequest unless·all the Jews in Jerusalem and all methods of ameliorating their condition should be within the scope of its charitable purposes. (*N. Y. Inst. for the Blind* v. *Howe*, 10 N. Y. 84; *Powers* v. *Cassidy*, 79 id. 610; *Trustees* v. *Cosgrove*, 4 Hun, 365.) It was the intention of our statute to abolish the British system as to charitable uses. (*Levy* v. *Levy*, 33 N. Y. 97; 1 R. S. 727, § 45; *Holmes* v. *Mead*, 52 N. Y. 332; *Bascom* v. *Albertson*, 34 id. 584; *Hollis* v. *D. T. Sem.*, 95 id. 172) Donations and endowments for educational, religious and charitable purposes, if otherwise valid, are upheld in our courts when made to institutions or societies having authority by charter or by law to receive them, and when the purposes contemplated by the donors are within the range of the objects of such societies and the scope of their general powers. (*Bascom* v. *Albertson*, 34 N. Y. 584; *Holland* v. *Alcock*, 108 id. 312.) The dictation of the manner of its use, as indicated in the testator's "request," does not affect the ownership of the corporation in the property bequeathed to it, and which the corporation has the right to use in accordance with the laws of its creation and for its purposes. (*Wetmore* v. *Parker*, 52 N. Y. 450, 458, 459.)

GRAY, J. In this action the plaintiff seeks to have it determined whether, under the will of the decedent, the defendant Leo, or the defendant " The North American Relief Society for the Indigent Jews in Jerusalem, Palestine," is entitled to the capital of a certain trust fund of $50,000.

It was claimed by each, and, thus far in the court below, the society has been successful. The testator left the fund in

trust to his executors, to apply the income thereof to the support of a nephew. When he died the executors were directed to pay the same " to any responsible corporation in this city, existing at the time of the death of my said nephew, whose permanent fund is established by its charter for the purpose of ameliorating the condition of the Jews in Jerusalem, Palestine, and I desire such corporation annually to transmit the interest received on said $50,000 to Jerusalem, Palestine, to ameliorate the condition of the Jews living there, by promoting among them education, arts and sciences, and by learning them mechanical and agricultural vocations. * * * In case my disposition of the $50,000, as provided for by the last clause of this my will, shall fail, and not take effect, then I give and bequeath the said principal sum of $50,000, equally to the children of my niece Jochebed, M. Simson Leo," etc.

The defendant Leo, appellant here, is the only child of testator's niece, Jochebed. The respondent society claims to be entitled to the fund, as being a responsible corporation, having a permanent fund, established by its charter, the interest of which is to be " *annually applied to the relief of indigent Jews in Jerusalem, Palestine.*" At the time of the testator's death, in 1857, this society had been in existence for about four years. He was then its president, and was one of its incorporators. It was found that no corporation, other than this society, existed in New York city, at the time of the death of testator's nephew, which could make any claim to be entitled to the fund; and as to its claim, the executors did not think it could legally perform the duties required by the testament.

The question of the right of the society to take this fund is invested with such difficulties as, in my opinion, seem to be insurmountable. Though the clauses under consideration are not written with much carefulness of expression, there is no difficulty in understanding the testator's intentions. They are clear enough, whether with regard to the benevolent purpose, or with regard to the event of its failure, by reason

of the non-existence of such a corporation as he contemplated to be the trustee of this fund. Nor does the appellant appear in that ungracious attitude of seeking to frustrate a testator's benevolent wishes, which deprives the claim of the adventitious aid of a sympathy in its presentation and prosecution; for, on the face of the matter, there is an obvious distinction between the objects as expressed by the testator in his testamentary provision and those for which this society exists. The society's objects are, as appear from its title and charter, to contribute "*to the relief of the indigent Jews,* in Jerusalem," while those of the testator were to ameliorate the condition of those living there "by *promoting among them education, arts and sciences, and by learning them mechanical and agricultural vocations.*" Clearly, in the accomplishment of the one purpose is involved the idea of charity, and of the other an educational system. Ideas which, while having their rise, and often owing their fulfillment to the same source, in the benevolence of individuals, are quite distinct in their aims. Therefore, for the appellant, as the contingent legatee of the testator's bounty, to say that his uncle's will is not being effectuated by paying over the money to this society, seems rather a contention in defense of the will, than an attempt to defeat any part of it. In addition, his position is fortified by being in harmony with that taken by the executors.

The testator has here constituted a trust with regard to the fund, by limiting its use to certain prescribed purposes. The gift is not absolute, but is qualified, by imposing upon the taker the performance of certain duties through the means of the income from the fund. We cannot free the bequest from the conditions imposed upon its use without wholly frustrating the testator's purpose. The "desire," which he expresses, has here the force of a command, because it expresses the object the testator had in view when making the bequest. It is very clear that where the donee of property is " desired," or " requested " by the testator to dispose of that property in favor of others, those words are imperative and their use will

create a trust. (See 1 Williams on Executors, 88; *Vandyck* v. *Van Beuren*, 1 Cai. 84.)

It may be admitted that the fact that this society may not be the particular donee intended by testator will not control the legal effect of his language; if the society can legally claim the gift, because of a legal capacity to effectuate the benevolent trust. The finding of fact by the learned judge at Special Term was that the testator did not intend to give this fund to this particular corporation, but to any corporation which could answer the description given by his will. Notwithstanding that the intention of the testator with respect to this society may not be controlling, it is impossible for it to be without its effect. The finding of fact could not well have been otherwise when we consider the circumstances. It is altogether inconceivable that a testator, intending a certain existing corporation to take under his will, should not only fail to name it, but should fail to describe its chartered objects, with some approach to accuracy, when he was an incorporator and its principal officer. The testator was not a layman but a lawyer, a fact deserving of attention. If we conclude that testator did not suppose this society capable of receiving this fund, are we not bound to scrutinize most closely its right to it, in view of the fact that he must have known, as a founder, what were its scope and projected aim? It is suggested, on behalf of the society, as a reason for the testator's not designating it by name, that it must have occurred to him that, before the close of his nephew's life, the society might have discontinued operations, or might have become irresponsible. This is an ingenious suggestion, but hardly one which has sufficient force to remove the obstacles to our finding an understanding in the testator that this society would take. I have adverted to the circumstances, at the time the will was executed, as illustrating the testator's close connection with this institution and the singularity of his omission to designate it, or to describe its corporate objects, if he had it in mind as competent to execute his benevolent purpose. When we are aided by extrinsic proof in the case

we should, after we have read the will, endeavor to place ourselves in the situation of the testator and thus ascertain his intentions and purposes.

His position with regard to the society, taken in connection with the fact of his being a lawyer, leaves no room for us to doubt as to his understanding of the legal status and aims of that corporation. He knew that its authorized corporate objects were to relieve indigent Jews in Jerusalem. He could not be supposed to be unaware of the distinction between performing those charitable offices which indigent individuals demand at the hands of their fellowmen, and the expenditure of moneys in building up an educational system among the members of his race, who resided in a distant land; not so favored as other lands were with the advantages of schools and academies of general learning.

The testator's description of the corporation, to which the money should be paid, as one whose charter established a permanent fund for the purpose of ameliorating the condition of the Jews in Jerusalem, does not agree with the stated objects of the charter of this society, if we read language with the meaning which the ordinary and usual sense and import of words convey. That the testator did not understand his description to refer to a corporation, whose chartered objects were to administer charity to the poor and needy, is evidenced by his subsequent definition of what he understood by ameliorating the condition of those of his race who dwelt in Jerusalem. He defines it as the promotion among them of "*education, arts and sciences and learning them mechanical and agricultural vocations.*" His purpose was liberal and benevolent; not such as is commonly understood by the courts as charitable. This society is limited by its charter to works of charity; and, while charitable work is promoted by benevolence, and a charitable society may be termed a benevolent society, there is a wide distinction between that object of benevolence and one which aims at maintaining an educational system. To relieve the indigent means to administer to their pressing and recur-

ring wants; to give them food and prevent them from falling into beggary.

It is a well known and notable fact with the Jewish race that their poor are so generally well taken care of as to make a Jew beggar almost an unknown spectacle. But to educate individuals does not relieve their indigence. Schools and lectures will not relieve the daily wants of families, or keep the wolf from the door. The general education afforded by the state, or by the benevolence of individuals, results in a few persons, in the general number, concentrating in themselves, by superior aptitude, the principles of learning, which the books and the teachers have taught them. These few may be enabled to make use of these principles by some practical application, and thus may be able eventually to improve their condition. But it cannot correctly be said that furnishing one with education relieves him from want. Many a student has starved, and many a scholar has suffered from physical privations, which his wealth of learning and stores of knowledge were useless to him to relieve. The promotion of education in the arts and sciences and in mechanical and agricultural vocations means to furnish all with the means of acquiring knowledge, irrespective of their wealth or poverty. I think we could not strictly, and, therefore, should not here say that a society instituted to relieve indigence comprehends an original design, or the purpose to educate persons in the arts and sciences or to follow a vocation. The objects are sympathetic, as are all the objects of benevolence; but they are distinct in their aim and in their prosecution.

It is quite conceivable that the testator, aware of the absence in Palestine of the opportunities for the various forms of education, sympathized with the members of his race in their deprivation, and felt that there was a field for benevolent action open, which would strongly appeal to others, who, like himself, had had so many advantages offered to them. I think it is quite probable that what the testator intended was to hold out an inducement to the formation of such a corporation as he describes. He knew there was none such in New York city,

but may have supposed that the influence of his example upon the rich and benevolent members of his race in that city, and the certainty of the eventual acquisition of this fund, might result in the incorporation of such a society.

I do not think the objects and purposes, to which the charter of this society limits it, comprehend the objects and purposes which the testator prescribes; and it should not, therefore, be permitted to take under this will. In each case, where a corporation claims the right to take under a will, that right may be the subject of severe scrutiny. Its right to take at all is derived from the act of incorporation, without the dispensation of which from the general statutory prohibition the corporation could not take. This bequest constitutes a trust for a purpose not included within those retained by the statute abolishing all uses and trusts; and unless, therefore, the purpose is comprehended within those which the chartered powers of the corporation enable it to effect, the bequest must fail.

The respondent cites the cases of the wills of *How* (10 N. Y. 84) and of *Hallgarten* (110 id. 678), where legacies were sustained; though in the former case the corporate name of the institution was not stated, and in the latter case the bequest was to an unincorporated society. The *Hallgarten Will Case* (reported as *Matter of Wehrhane* in 110 N. Y. 678) does not touch the present case, because there the "Newsboys' Lodging House" was a branch department of the Children's Aid Society, to which the testator had already also given a legacy. In the case of *New York Institute, etc.,* v. *How's Executors* (10 N. Y. 84), the court held that it was a question of identity, arising upon description, and that the point was whether the legatee can be found. It was held that though the act of incorporation did not bring the objects of the institution within those described in the will, that "subsequent legislation had so far modified the charter of the corporation in those particulars that when the will was made these several circumstances had been engrafted upon it and might well enter into a description of its general scope and purposes. As the court

found in that case that " the corporation which claims the
legacy completely answers the description which the testator
has given," it was a logical result to sustain its claim.

I admit the principle invoked by the respondent that where
the intention is apparent the court must give such a construc-
as will support the intention of the testator. It is one too
well settled and too often invoked by judges to be overlooked.
It is upon that principle that courts of justice act in constru-
ing wills. Where the apparent intention is commendable, as
in this case, courts may strain in their effort to give it effect.
But we have here a case where the testator's intention, as
derived from the extrinsic circumstances and from the language
of his will, would appear to exclude the respondent society.
The omission to name this society, or to describe more aptly
its chartered purposes, is as highly significant, as it is certain
that the society does not fall within the class of corporations
described. In order to execute such a trust as is here con-
templated, some legislative action, or amendment of the charter
would be required, which would enable it to comprehend the
promotion and maintenance of educational enterprises within
the scope of its chartered powers. Now a corporation can
exercise no other powers than those expressly conferred by
the charter and those which may be necessary to the exercise
of the powers so given. For us, therefore, to sanction the
claim of this society to the fund would be to disregard the pro-
visions of the Revised Statutes with respect to the powers of
corporations, and to hold that a ·corporation, upon which is
conferred the capacity to perform a certain function, may take
upon itself the performance of other functions, which are in
their nature distinct and different.

The appellant also has presented the point that the bequest
was void for indefiniteness. The direction of the testator was
to pay the money to " *any responsible corporation in the city
existing at the time of the death of his nephew, whose per-
manent fund,*" *etc.* Unquestionably, if there were more
than one such society in existence at the time, the gift would
be void for the uncertainty. The learned justice at Special

Term conceded that, and found great difficulty in reaching his conclusion to sustain the claim of this society. He confessed his doubt; but thought, upon the facts of this particular case, the bequest might be sustained. Inasmuch as, in his opinion, this society answered the description of the will, and as it was the only one in existence he upheld its claim. The learned justice at General Term thought the bequest sufficiently definite, under the authority of *Powers* v. *Cassidy* (79 N. Y. 602). The objection is a very grave one; but, inasmuch as I conclude that this society is not the one described in the will, and that it cannot legally execute the benevolent trust purposed by the testator, I think discussion needless upon this head.

The judgments below should be reversed and, as a new trial could not be productive of any different result, judgment absolute should be entered for the appellant Leo, with costs to be paid out of the estate.

All concur.

Judgment accordingly.