(22 Misc. Rep. 158.)

ALLEN et al. v. STEVENS et al.

(Supreme Court, Special Term, Onondaga County. December, 1897.)

1. WILLS—EQUITABLE CONVERSION.
    A will devised real and personal property to trustees, for the purpose of founding and maintaining a home for the aged, and gave authority to sell the estate. There was not enough personal property to pay the debts, legacies, and expenses. *Held*, that all the property must be treated as personalty for the purposes of the trust.

2. CHARITABLE TRUSTS—PERPETUITIES—INDEFINITENESS OF BENEFICIARIES.
    A will devised property to trustees for the purpose of founding and maintaining a home for the aged, with authority to the trustees to sell or rent the estate, and provided that certain banking interests might be continued during the lives of two persons named. *Held*, that the will vested the title absolutely in the trustees on the death of testator, and, being limited by two lives in being, did not violate the statute against perpetuities, nor contravene any statute as to corporations or associations entitled by their charters to take gifts for charitable uses, and was not void for indefiniteness of beneficiaries.

3. WILLS—RESTRICTIONS ON CHARITABLE DEVISES.
    Laws 1860, c. 360, which prohibited testators from devising more than one-half their property to corporations and associations of certain classes, does not apply to others not named or to individuals.

4. SAME—WHO MAY URGE VIOLATIONS.
    Laws 1860, c. 360, which prohibited testators from devising more than one-half of their property to certain corporations, and thereby depriving near relatives named therein of the property, was passed for the sole benefit of such relatives; and other relatives not mentioned, although interested in the property, have no right to insist on the enforcement of the statute.

5. CHARITABLE TRUSTS—VALIDITY—CONSTRUCTION OF STATUTE.
    Laws 1893, c. 701, is entitled "An act to regulate gifts for charitable purposes," and provides that a devise to charitable uses, "which shall in other respects be valid under the laws of this state," shall not be invalid by reason of the indefiniteness of the persons designated as beneficiaries in the instrument creating the same; that, if a trustee be named in such instrument, title shall vest in him, and, if none be named, title shall vest in the supreme court, which shall have control of the devise. *Held*, that the act

not only relieves devises to charity when the beneficiaries are uncertain, but also includes all devises for charitable uses, whether to corporations or individuals.

Action by Benjamin G. Allen and others against Charles E. Stevens and others for the construction of a will. Judgment for defendants.

W. G. Tracey, for plaintiffs.

A. C. Stevens and George R. Cook, for defendant trustees and executors.

Frank Hiscock, for defendant attorney general.

C. Carskadden, for defendant S. B. Breese.

Brooks & Walrath, for Syracuse University.

Charles C. Cook, for defendants Syracuse Home Ass'n, Hope College, and Onondaga County Orphan Asylum.

Charles E. Stevens, for First Reformed Dutch Church, of Syracuse, and Henry D. Mulford.

M. E. & G. W. Driscoll, for St. Joseph's Hospital.

Sutphen & Lefferts, for General Synod.

G. D. Chapman, for other defendants.

SCRIPTURE, J. This action was brought by the plaintiffs, who are the only heirs at law of Nathan F. Graves, deceased, for the construction of the last will and testament of said deceased, and all questions relating to the construction of said will can therein be properly adjudicated. The executors intended to bring an action for the construction of said will, but were not quite ready to do so at the time of the commencement of this action. Nathan F. Graves, an old resident of Syracuse, N. Y., died July 21, 1896 (at the age of about 83 years), leaving no descendants him surviving, but leaving Catherine H. Graves (who at the time of his death was about 85 years of age), his widow, and the plaintiffs, his only heirs at law and next of kin. He left a will, drawn by himself, bearing date September 15, 1893, proved in the surrogate's court of Onondaga county, September 5, 1896; and on the same day letters testamentary were issued to Charles E. Stevens and Maurice A. Graves, two of the executors and trustees named in said will, Rasselas A. Bonta, and executor and trustee therein named, having renounced as executor, but not as trustee. The executors believe that all of the legacies and devises under said will are valid, except the one to Helen A. Graves, who died in the lifetime of the testator. The personal estate of the testator was appraised at about $88,000. The real estate of the testator is probably worth $100,000, more or less, and about which there is an action in the supreme court pending and undetermined, involving $40,000 or $50,000; it being claimed on the part of said executors that the same is a part of the testator's estate, and on the part of the committee of Catherine H. Graves (the former owner) that the same doth belong to her. The testator was a lawyer by profession, and had practiced law more or less until his death, but was not actively engaged in his profession during the last 20 years of his life, but had an office in the front room of the New

York State Banking Company (of which bank he was president for about 40 years), and transacted such law business as he did in such office. The testator, by his will, has appropriated for his own benefit, or bequeathed to corporations, societies, and associations, about $28,000, no part of which has been paid; $22,000 to relatives and friends; the use of his bank stock (between $20,000 and $30,000) he bequeathed to his wife for life, and the same forms a part of his residuary estate; and the balance of his property to Charles E. Stevens (a nephew and former law partner), Maurice A. Graves (a nephew), and Rasselas A. Bonta (who had been the cashier of his bank for towards 40 years), in trust, to found, erect, and maintain a home to be known as "Graves Home for the Aged." The defendants, Charles E. Stevens, Maurice A. Graves, and Rasselas A. Bonta, are the trustees named in the tenth paragraph of the will of Nathan F. Graves, late of the city of Syracuse, deceased, and Charles E. Stevens and Maurice A. Graves are also the acting executors of such will. By the tenth subdivision of such will, the testator gives and devises unto all such trustees all the residuum of his estate, in the following words:

"I give, bequeath, and devise all the rest and residue of my property, of every kind, personal and real, wherever situate, to my trustees hereinafter named, for the purpose of founding, erecting, and maintaining Graves Home for the Aged, to be located in the city of Syracuse, in the state of New York. It is intended as a home for those who, by misfortune, have become incapable of providing for themselves, and those who have slender means of support; the institution to be known as 'Graves Home for the Aged.' I hereby appoint Charles E. Stevens, Rasselas A. Bonta, and Maurice A. Graves for the trustees to execute the above trust. I hereby authorize and empower my executors, or the survivor of them, to rent or sell any part or all of my real estate that I may own at the time of my death."

Then follows an authority to the trustees to convey, in substantially the same words. And the eleventh subdivision of the will reads as follows:

"My executors or my trustees are authorized to retain my stock and shares in the New York State Banking Company, and continue the business of banking for a term of years, at their discretion; but the same is not to be continued nor any portion of my property held longer than the lives of Catherine Graves Roby and Helen Breese Graves."

It is claimed by the plaintiffs that this portion of the will is void by reason of the indefiniteness of the trust and the uncertainty of the beneficiaries, and that it violates the rule against perpetuities. The plaintiffs ask for the construction of the will principally upon two questions: First. Is the residuary devise and bequest by the testator to the Graves Home for the Aged invalid?—claiming it is void and that the plaintiffs are entitled to all the real estate of the deceased, and all the personal property remaining after the payment of valid legacies, and subject to any share the widow may be entitled to therein. Second. Whether, in case the devise and bequest to the Graves Home for the Aged is valid, such devise or bequest to trustees to found such home falls within the statute of 1860,—claiming that it does. These defendants claim that the above constitutes a perfectly valid trust under the laws of this state, and they

49 N.Y.S.—28

base such claims on two grounds: First, two recent statutes, chapter 701 of the Laws of 1893, and chapter 547 of the Laws of 1896; and, second, irrespective of such statutes, on the authority of the case of Burrill v. Boardman, 43 N. Y. 254, and the doctrine therein set forth, and which is hereafter fully set forth.

Before considering the effect of the Laws of 1893 and 1896 upon gifts for charity, the history of that law in England and all of the states of the Union, including New York, with the powers of the English court of chancery and the cy-pres doctrine, should be considered. The original and inherent jurisdiction of courts of equity in the different states, and the source from whence their cy-pres powers are derived, should also be examined, to the end that the true intent of the legislature may be arrived at, and from what source or sources and principles the framers of the law created the act. Based upon certain prerogatives of the crown and the statute of 43 Eliz. c. 4, the court of chancery in England exercised a peculiar jurisdiction over charitable trusts, in determining and applying gifts to charity where the donor had failed to define them, and in framing schemes of approximation near to or remote from the donor's true design. Where, therefore, there was a gift for a general and indefinite charitable purpose, either the king, under his sign manual, or the court representing him, disposed of the subject donated. "The distinguishing features of this class of trusts as administered in England, from an early period, were that they might be established through trustees, who might consist either of individuals or a corporation; and, in the case of individual trustees, they might hold an indefinite succession, and be self-perpetuating, and the funds might be devoted in perpetuity to the charitable purposes indicated by the donor, while private trusts were not permitted to continue longer than a life or lives in being and twenty-one years and a fraction afterward. The persons to be benefited might consist of a class, though the individual members of the class might be uncertain. The scheme of the charity might be wanting in sufficient definiteness or details to admit of its practical administration, and in such cases a court of equity would order a reference to a master in chancery to devise a scheme for its administration which should as nearly as possible conform to the intentions of the founder of the charity, and thus was called into operation what was known as the 'cy-pres doctrine.' These charitable trusts were regarded as matters of public concern, and were enforceable by the attorney general, although in many cases the court would compel their performance without his intervention at the instance of a town or parish, or of its inhabitants, or of an individual of the class intended to be benefited, such as one of the poor or maimed," etc. Opinion of the court, per Rapallo, J., Holland v. Alcock, 108 N. Y. 324, 16 N. E. 305. It was well said in Vidal v. Girard Ex'rs, 2 How. 127, and Price v. Maxwell, 28 Pa. St. 23, speaking of trusts for charitable uses: "Whatever is given for the love of God, or for the love of your neighbor, in the catholic and universal sense, given from these motives, and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish," is a gift for

charitable uses. But a condition that the donor's name shall be attached does not invalidate it as a legal charity. Miller v. Porter, 53 Pa. St. 292. It was at one time supposed that trusts for charitable uses arose from the provisions of the statute of 43 Eliz. c. 4, known as the "Statute of Charitable Uses," which enumerated many which were directed to be enforced; but the design of this and several prior statutes was merely the restoration and encouragement of the charitable institutions which had been abolished by earlier statutes. Perry, Trusts, § 692. The English court of chancery, earlier than the enactment of this statute, has often exercised jurisdiction over the trusts, not from the statute, but independently of it. Vidal v. Girard's Ex'rs, supra. It is now generally settled that courts of equity have an original and inherent jurisdiction over charities, though the English statute is not in force.

It is believed that at the time of the passage of Laws 1893, c. 701, in every state of this Union, except Maryland, North Carolina, New York, Virginia, and Wisconsin, courts of equity have cy-pres power and jurisdiction over trusts for charity. In some of the states the statute of 43 Eliz. c. 4, has been adopted, while in others the principles of the statutes have been adopted and constitute part of the law of the state. In some of the states the court of chancery has jurisdiction by virtue of its original common-law power without claiming prerogative powers or invoking the aid of the statute. The statute of Elizabeth was repealed by the state legislature in 1788, and the prerogative of the crown had, of course, no effect in this state; but the powers and jurisdiction of the English court of chancery, as they existed in England at the time of the Revolution, were supposed to have followed and remained with courts of equity in this state; and the law of charities, it was claimed, independent of the statute of Elizabeth, was in force prior to that statute, and continued after its abolition. It was also held that the provisions of the Revised Statutes relative to restriction on alienation generally, and to accumulations of personal property and of expectant estates, did not affect property given in perpetuity to religious or charitable institutions. Williams v. Williams, 8 N. Y. 527; Owens v. Society, 14 N. Y. 380; Beekman v. Bonsor, 23 N. Y. 298. In Williams v. Williams it was considered by the court of appeals that the law of charity was, at an early period in English judicial history, ingrafted upon the common law, and that it existed irrespective of the declaratory statute of Elizabeth which was afterwards repealed. The proceedings, under that statute, were considered of an exceptional nature, applicable to existing gifts, and not to the exercise of a general jurisdiction of the courts over charitable gifts, which, consequently, remained unimpaired on the abolition of the statute. It was held in Beekman v. Bonsor, 23 N. Y. 298, that, as a general rule, charitable trusts are subject to the rules which appertain to trusts in general; among others, that the trust must be capable of execution by a judicial decree, in affirmance of the gift as the donor made it; and, consequently, that a charitable gift of a sum which is left uncertain, or which is left to the discretion of executors

who have renounced the trust, especially where the objects to be benefited are not especially designated, was void; that the English common law on the subject could only be considered as in force here so far as it is adapted to our political condition, and capable of administration in the exercise of strictly judicial power, inasmuch as our courts arè clothed only with an expressed judicial authority, and do not act as exponents or ministrants of a governing power. In the cases of Levy v. Levy, 33 N. Y. 97, and Bascom v. Albertson, 34 N. Y. 584, it was held that the statute of charitable uses was repealed by statute in 1788, and with it the whole system of charitable uses, and that trusts for charities must be as definite as private trusts, and that indefinite charitable uses must be administered according to the statute of the state, and that all gifts for such uses are subject to the provisions of the Revised Statutes in relation to uses and trusts, perpetuities, and the limitations of future estates. The cy-pres power of the English courts of chancery was definitely held not to have any existence in the jurisprudence of this state in Holland v. Alcock, supra, and that trusts for charitable purposes formed an established exception to the law against perpetuities, as it existed before the Revised Statutes, and that it was not the intention of the legislature in reversing the branch of the law relative to perpetuities to abolish that feature of the law of charities which allowed the income of property to be perpetually devoted to charitable purposes.

The trend of decisions up to the passage of Laws 1893, c. 701, and Real Property Law (chapter 547, Laws 1896) § 93, are to the effect that courts of equity had no cy-pres powers; that gifts to individuals as trustees in perpetuity, to unincorporated associations, to corporations not expressly authorized by charter or statute to take, or for uncertain, undefined, or indefinite uses, or for the use of undefined or indeterminate beneficiaries, and not limited to take effect within the statutory period, all were invalid. Read v. Williams, 125 N. Y. 560, 26 N. E. 730; Wilcox v. Gilchrist, 85 Hun, 12, 32 N. Y. Supp. 608; Prichard v. Thompson, 95 N. Y. 76; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880; Fairchild v. Edson, 77 Hun, 298, 28 N. Y. Supp. 401; Gross v. Moore, 141 N. Y. 559, 36 N. E. 343; Goddard v. Pomeroy, 36 Barb. 546; People v. Powers, 147 N. Y. 104, 41 N. E. 432; White v. Howard, 46 N. Y. 144; In re O'Hara, 95 N. Y. 403; Rose v. Hatch, 125 N. Y. 427, 26 N. E. 467; Fosdick v. Town of Hempstead, 125 N. Y. 581, 26 N. E. 801; Jennings v. Conboy, 73 N. Y. 230. "The characteristics of a charitable use before the Revised Statutes were indefiniteness and permanence,—indefiniteness, in that the trust was for the benefit of a class or the public, and not for a particular person; permanence, in that the rules relating to perpetuities had no relation to charity unless the execution of the charity was postponed. Limitations, settlements, or gifts intended to benefit the public, or which have some educational, benevolent, charitable, or religious end, usually present two characteristics. They are permanent in operation, and they are indefinite or uncertain in respect of the real or individual beneficiaries." Fowler,

Charitable Uses, 1896. The Revised Statutes abolished all uses and trusts in real property not therein authorized, and, among others, trusts and uses for charitable purposes. Riker v. Leo, 115 N. Y. 93, 21 N. E. 719. This statutory abrogation of all trusts except the four classes specified in the statute does not apply to personal property trusts. Holmes v. Meade, 52 N. Y. 332. In personal property, trusts may be created for any purpose not in its nature improper; but, in so far as any trust in personal property affects suspension of the absolute ownership, it falls within the operation of the statute forbidding such suspension beyond two lives in being. Barry v. Lambert, 98 N. Y. 300; Genet v. Hunt, 113 N. Y. 158, 21 N. E. 91; Fowler, Charit. Uses, 97. The Revised Statutes permitted the creation of powers in trust for any purpose not contrary to law, but prohibited an undue suspension of the power of alienation. The Revised Statutes did not provide specifically the term for which a trust may be created, except in few instances which are not important here. The real property law provides that every express trust ceases when its purpose ceases. The only other statutes bearing on this subject are those which deal with suspension of the power of alienation or of ownership beyond a specified term.

Briefly stated, the law of charitable uses contemplated permission of an indefinable class of beneficiaries, an unlimited term, and they were entirely abolished as to real and personal property, and whether under trusts or powers; but certain quasi charitable trusts and powers could still be created, restricted, in cases of suspension, to the statutory term, and in all cases to the benefit of persons who might be very numerous, but must be definitely ascertained; and the particular purpose of these quasi charitable trusts was restricted, in real property, by the terms of the statute specifying the purposes authorized, and in personal property or under powers to any purpose not contrary to law; and the only method (with a few statutory exceptions like the Shaker trusts) provided by law for accomplishing a similar end, without a time limit or a definite description of the individuals who might ultimately and directly secure a benefit, lay in the system of corporations chartered for charitable purposes. Bird v. Merklee, 144 N. Y. 544, 39 N. E. 645. The legislature had taken away, and the legislature might give again, the power to create charitable uses, untrammeled by these restrictions. Some such exceptions were from time to time created.

The will of Mr. Graves does not provide for the formation of a corporation or society by said trustees, and the conveyance of the property to it. It expressly provides for the founding, erecting, and maintaining the charity under his name, to be known as "Graves Home for the Aged," and appoints the trustees to execute the trust. They are not directed to incorporate a society or corporation to do it, conveying thereto the estate they take under the will, but they are to execute it. The title to the property devised to the trustees vested absolutely in them free from any charges on the death of Mr. Graves. The charge of the payment of income of certain real and personal estate did not suspend the vesting of the title of the

estate in them until the widow's death. The eleventh clause of the will
expressly provides that no portion of his property shall be held longer
than the lives of two persons in being named. The statute of per-
petuities is in no way violated. Numerous cases have held devises
for charitable purposes invalid' which directed the incorporation of
a company to take title and administer the charity, which of neces-
sity could not be done within the lives of two persons in being.
"One vice in all these cases was that, by force of the limitations
created, the ownership was left 'swinging in abeyance,' doubtful of
its direction and ultimate resting place; and this for a period longer
or shorter, and not measured by lives in being." Opinion by Finch,
J., Cruikshank v. Chase, 113 N. Y. 337, 21 N. E. 64. "It seems that
the nonexistence, as a corporate body, at the time of a testator's
death, of an institution intended by him as an object of his bounty,
will not alone defeat a testamentary gift. If no such limit is fixed
to the time of incorporation, but is left dependent upon the will of
the legislature, the gift is void." People v. Simonson, 126 N. Y.
299, 27 N. E. 380.

The case that resembles the one at bar is Burrill v. Boardman,
43 N. Y. 254. It was an executory bequest to trustees for the es-
tablishment in the city of New York of a hospital for the reception
of sick and diseased persons, and for its permanent endowment,
directing the trustees to apply to the legislature for proper acts to
incorporate, secure, and perpetuate said hospital. The will further
provided that, in the event the legislature refused the charter within
two lives in being at his 'decease, the trustees, from time to time,
pay over the bequests that may come into their possession to the
United States, etc. This executory bequest was held good on the
same principle as a devise for the benefit of an unborn child. "The
testator does not only declare his intention to give to a person not
in esse, but is actually giving directions for the creation of that
person; and there is no difference between the cases, but that one
is an executory trust for a natural person, to be created, and the
other is a political person to be created." Attorney General v.
Downing, Wilm. Op. 16; Burrill v. Boardman, supra. The testa-
tor, in the case of Power v. Cassidy, 79 N. Y. 602, gave the residuum
of his property to his executors, to be divided by them among such
Catholic charities and churches, etc., in the state of New York, as
the majority of his executors should decide, and in such proportions
as they should think proper. This will was sustained, and it was
held that by the terms of the will there was an equitable conversion
of the testator's real estate into personalty. The principles held in
the case cited were approved in People v. Powers, 147 N. Y. 104,
41 N. E. 432. The courts have built up on the ruins of the Williams
Case a system or rule of law holding that if a man desires to leave
his real property to charity, he can only do so through a corporation,
making his bequest to a corporation entitled by its charter to re-
ceive and hold the gift for charitable uses, or he must provide by
his will for the creation of a corporation, with power to take the
gift within the time limited by the statute against perpetuities.

"When the gift to a charitable use is so indefinite as to be incapable of being executed, the representatives of the donor must prevail over the charity."

Williams v. Williams, supra, is the only case which defines the trusts that are and are not capable of execution by judicial decree. Judge Denio says, on page 549:

"The cases in which the intervention of the king is required are very different. The rule upon this subject is laid down with precision by Sir William Grant, in Ommanney v. Butcher, Turn. & R. 260. 'The law upon cases of this sort,' he says, 'is now reduced to very clear and distinct principles. Where there is a general, indefinite charitable purpose, not fixing itself upon any particular object, the disposition is in the king by the sign manual; but where the gift is to trustees, with general or some objects pointed out, the court will take upon itself the execution of the trust. If he [the executor] is not to take for his own benefit, the consequence is that if a particular object, as the erection of a school, or even a general object, providing it can be seen what the purpose is, is pointed out, the court will execute the trust; but if there is an absence of discretion in individuals, and the object to which the fund is to be applied is of a general, indefinite nature, the law casts the application of the fund upon the king as parens patriæ. The gift in that case was of a residue, to be given in private charity.' In Moggridge v. Thackwell, 7 Ves. 36, the same doctrine is laid down by Lord Eldon. The will, in that case, gave the residue to an individual, 'desiring him to dispose of the same in such charities as he shall think fit, recommending poor clergymen who have large families and good characters.' Lord Thurlow had decided that this was sufficiently definite to be executed by the court, and Lord Eldon affirmed the decree on a rehearing. In Cary v. Abbot, Id. 490, the bequest was for the education of poor children in the Roman Catholic faith, which, by the law of England, was illegal; and the master of the rolls decreed that the fund should not go to the next of kin, but to such charitable purposes as the king, under his sign manual, should appoint. See, also, Reeve v. Attorney General, 3 Hare, 191; 2 Story, Eq. Jur. § 1190. It is only where the purpose is indefinite, as in the case of a gift for charity generally, or has become impracticable on account of the death of a party who was to select the object, or is illegal, as in the case last referred to, that the aid of the crown is required."

One of the results of the decisions built up on the ruins of the Williams Case was that the courts would not permit a willing trustee to carry out the benevolent and charitable purposes of the testator. The common-law courts knew no such thing as a trustee when the legal title was vested where they supposed the beneficial enjoyment to be. A trustee is a creature of equity, and, when he becomes vested with the legal title under a valid will, the trust expressed by the testator failed. The only way in which the benefit of the property could be given to the representatives of the testator was by a court of equity creating in the heirs and next of kin an equitable interest, or "equitable estate," as it is called, and thus decreeing a resulting trust. Now, then, the very nature of a resulting trust—the principles upon which it arose—was either to carry out the intentions of the testator or grantor, as the case might be, or to prevent the unjust enrichment of the person holding the legal title. They arise when property has been conveyed or willed upon trust, and either, through inadvertence, no beneficiary is named, or, if named, is not in existence or refuses the gift, or else that the trust created is illegal or against public policy. In the one case it is impossible for the trustee to carry out the trust, and

in the other case the law says that, since the trust is against public policy, in no event will we allow the trustee to carry out the trust. Hence it is seen in either case for the trustee to keep the property would be manifestly unjust; he would be unjustly enriching himself. Why? Because the giver of the property, by declaring the gift to be in trust, has clearly indicated his intention that the trustee shall not have it himself; and, since it is absolutely impossible to give it to the persons who the testator meant should have it, it is eminently just that it should be returned to the heirs and next of kin by means of a resulting trust, in order to prevent the unjust enrichment of the trustee. Now, in the case of a charitable trust, where the trustee is willing to execute the trust according to the confidence imposed in him by the testator, nothing of the kind happens. It would be a travesty on justice to say that a charitable trust, such, for instance, as to A. B. for the purpose of educating such poor children as he should select, was against public policy. To say that it would be impossible for the trustee to carry out the trust if left alone would be to say that he was void of ordinary intelligence. The testator has created no equitable interest in his heirs and next of kin. In fact, he has indicated his intention that they should not have his property. He has vested in the trustee a personal confidence, and as long as the trustee is willing and anxious to carry out the intentions of the testator, and is not in any way trying to unjustly enrich himself, there is no occasion for the court to create an equitable estate in the heirs, and decree a resulting trust.

The effect of refusing to allow a willing trustee to carry out a trust is described by Professor Ames, of Harvard Law School, as follows:

"In the one case, where the will of the testator cannot be carried out, equity, by interfering, prevents the unjust enrichment of the trustee at the expense of those better entitled. In the other case, where the will of the testator can be fulfilled [i. e., a charitable trust], equity, by interfering, defeats his will, and thus produces the unjust enrichment of the testator's representatives, at the expense of the intended beneficiaries. In the one case the impossibility of performing the express trust gives rise to an equitable constructive trust. In the other case an inequitable constructive trust is what causes the impossibility of performing the express trust. Surely, a strange perversion."

But it is argued that it is the essence of a trust that there should be a beneficiary capable of coming into court, and demanding the execution of the trust. This is all very well when it comes to enforcing the execution of the trust. If the trustee refuses to carry out the intentions of the testator, then he is trying to unjustly enrich himself; and the court not being vested with any discretionary power by the testator, if it cannot ascertain the beneficiaries, may rightly and on principle decree a resulting trust. Is the above not exactly what the courts of this state have done in that class of cases (hereafter more fully referred to), where a testator has made a bequest to a corporation to be devoted to a particular object, as the support of the poor? The courts hold that, no matter how indefinite the ultimate beneficiaries, if the corporation has the corporate power

to perform the thing designated, the bequest is perfectly valid, and that there is really no trust. Adams v. Perry, 43 N. Y. 487; Wetmore v. Parker, 52 N. Y. 450; Le Couteulx v. City of Buffalo, 33 N. Y. 333. The most recent case of this class is Bird v. Merklee, 144 N. Y. 544, 39 N. E. 645, where the testator gives his property to certain churches for the purpose of buying coal for the poor of such churches. Suppose that one of these churches, by its charter, also had the corporate power of running a baseball park, or, to make an extreme case (extreme cases best illustrate a principle), of carrying on a race course, and should apply the money given for the purpose of training horses; would the courts still say that there was really no trust? I think, in common justice, they would say that the corporation was unjustly enriching itself, and, if the courts could not ascertain the beneficiaries, would then decree a resulting trust. Why should not a bequest to a trustee for a specific purpose, where the rule against perpetuities is not violated, and the trustee is willing to execute the trust, be held valid as well as a bequest to a corporation for a specific purpose? A trust of personal property is not within the statute of uses and trusts, and may be created for any purpose not forbidden by law. Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, and see cases heretofore referred to on trusts and uses in personal property.

I am inclined to regard the trust in this case at bar as a trust of personal property, and the direction of the testator for the sale amounts to equitable conversion for the purpose of paying debts and legacies and the founding of Graves Home for the Aged, and a full execution of the charity. It is evident that the personal property is not sufficient to pay the debts, legacies, and expenses of administration. The property must be treated as personal for the purposes of the trust. First, the will directs the sale of it; and, second, necessity demands the conversion. Asche v. Asche, 113 N. Y. 232, 21 N. E. 70; Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498; Dodge v. Pond, 23 N. Y. 69; Power v. Cassidy, 79 N. Y. 602; Lent v. Howard, 89 N. Y. 169; Fraser v. Trustees, 124 N. Y. 479, 26 N. E. 1034; Shipman v. Rollins, 98 N. Y. 326. I am unable to find a single authority in the courts of this state holding or even intimating that a testator cannot, through private individuals and friends, selected as trustees (giving and devising to them the absolute title), work out and provide a private charity to the same extent and in all respects as valid as a devise to a corporation or to trustees to convey to the same for charitable uses, within two years after the testator's death, provided two lives named in his will should continue so long. The title of the property vested absolutely in the trustees, free from any charges, upon the death of Mr. Graves. His will does not violate the statute against perpetuities, and does not contravene any statute of the state as to corporations, associations, and societies entitled by their charters to take and receive gifts for charitable uses. It is the duty of the court to harmonize and retain as far as possible all the provisions of the will, to reject no words of the maker except upon imperative necessity, and to seek for all

of them some force and operation. The court may punctuate, and add, omit, or substitute words, in order to give effect to the actual intention appearing from the instrument as a whole; as by adding commas and relative pronouns, changing "and" to "or," correcting plural into singular, transposing, inserting, and omitting. Crooke v. County of Kings, 97 N. Y. 421, 434; Fraser v. Trustees, 124 N. Y. 479, 26 N. E. 1034; Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933; Weeks v. Cornwell, 104 N. Y. 325, 10 N. E. 431; Mott v. Ackerman, 92 N. Y. 539; Starr v. Starr, 132 N. Y. 154, 30 N. E. 384. Where a testator's object is unworthy or commands the just condemnation of the court, it will not strain to support its plan. In re Paton, 111 N. Y. 480, 18 N. E. 625; Greene v. Greene, 125 N. Y. 506, 26 N. E. 739. But, apart from this objection, it endeavors to find a way of upholding the will, and to effectuate it through some legal channel of construction, if any be open. Greene v. Greene, supra; Locke v. Trust Co., 140 N. Y. 135, 35 N. E. 578; Terry v. Wiggins, 47 N. Y. 512; Duclos v. Benner, 136 N. Y. 560, 32 N. E. 1002. In aid of a construction which would give validity, testator may be presumed to have known the law and intended that meaning. The law favors a construction that will avoid intestacy. Chwatal v. Schreiner, 148 N. Y. 683, 43 N. E. 166. I am of the opinion that the devise and bequest for founding "Graves Home for the Aged" is valid, independent of the remedial acts of 1893 and 1896.

The plaintiffs claim that, if the devise and bequest to "Graves Home for the Aged" is valid, then such bequest falls within the statute of 1860, and that the testator's wife, and plaintiffs are entitled to receive all of the property in excess of one-half part thereof, which the corporations and associations named in the acts can hold in trust or otherwise. A testator having wife, child, or parent was not prohibited by chapter 319 of the Laws of 1848 and chapter 360 of the Laws of 1860 from giving his entire estate to other corporations and associations not named in those acts, or to other individuals.

In Harris v. Slaght, 46 Barb. 504, Johnson, J., speaking:

"But the restraint is only against the corporations of a specified character or description, and not even corporations generally. And, as respects individuals, there is no restraint whatever. There is nothing whatever in the provisions of this act (referring to chapter 319 of the Laws of 1848) to prevent a testator thus related from giving his entire estate to other corporations or to other individuals."

In Re Crane's Will, 12 App. Div. 276, 42 N. Y. Supp. 904, the court says:

"The point is also taken that the bequest to the city conflicts with the provisions of chapter 360 of the Laws of 1860, prohibiting the gift by a testator, under certain circumstances, of more than one-half of his estate. But this act only applies to benevolent, charitable, literary, scientific, religious, or missionary societies; in other words, to a particular class of private corporations. It does not apply to the state, nor to individuals, nor to public or municipal corporations."

In Hollis v. Seminary, 95 N. Y. 166, Judge Earl says:

"The general rule is that one may do with his property as he pleases. He may dispose of it by will in any way that suits his fancy or his judgment. He

may give it all to strangers, and thus disinherit his relations. He may give it all to natural persons or to corporations capable of taking. He may give it directly, or create trusts which the law allows, and this general power of disposition he possesses down to the last hour of conscious, intelligent existence."

The statute of 1860 does not include devises to individuals or devises to the supreme court.

The counsel for the executors makes the further point that the law of 1860, naming certain near relatives, was passed for the sole benefit of those persons named, and that relatives or heirs, not named in the law, although they would benefit by its application, have no right or standing in court to insist on its enforcement. After a careful examination of the decisions, and particularly of the recent case of Amherst College v. Ritch, 151 N. Y. 333, 45 N. E. 876, we are of the opinion that he is fully justified in his contention.

The will should also be sustained under the remedial acts. The supreme court, besides its original jurisdiction over trusts, is given by the acts in question control over gifts for charitable or benevolent uses, and the cy-pres powers of the English courts are adopted and conferred upon it in some respects.

Laws 1893, c. 701, § 1: "No gift, grant, bequest or devise to religious, educational, charitable, or benevolent uses, which shall, in other respects be valid under the laws of this state, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant, bequest or devise there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee then the title to such lands or property shall vest in the supreme court."

Section 2: "The supreme court shall have control over gifts, grants, bequests and devises in all cases provided for by section 1 of this act. The attorney-general shall represent the beneficiaries in all such cases, and it shall be his duty to enforce such trusts by proper proceedings in the court." (Not repealed in 1896.)

Real Property Law, c. 547, § 93: "A conveyance or devise of real property for religious, educational, charitable or benevolent uses, which is in other respects valid, is not to be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument making such conveyance or devise. If in such instrument a trustee is named to execute the same, the legal title to the real property granted or devised shall vest in such trustee. If no person is named as trustee, the title to such real property vests in the supreme court, and such court shall have control thereof. The attorney-general shall represent the beneficiaries in such cases and enforce such trusts by proper proceedings."

The statute is to be construed so as to carry out the intention of the legislature, though it seem contrary to the letter. A thing that is within the intention of the makers of the statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it is within the intent of the makers. Jackson v. Collins, 3 Cow. 89; Smith v. People, 47 N. Y. 330; Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188. Where the legislative intent is manifest, the letter of the statute must, upon the most familiar rules of construction, yield to the spirit; and, if remedial in its nature, it should be liberally

construed, with a view to the beneficial ends proposed. Murray v.
Railroad Co., *43 N. Y. 274, 278; Hudler v. Golden, 36 N. Y. 446.

By the Revised Statutes all uses and trusts in real property not
therein authorized were abolished. Among those not thus author-
ized were all those for charitable purposes. The statute permitted
the creation of powers in trust for any purpose not contrary to law,
but at the same time prohibited any employment of them to effect
an undue suspension of the power of alienation. The legislature
had taken away, and the legislature might give again, the power to
create charitable uses, and untrammeled by these restrictions. For
example, in Rev. Laws 1813, p. 212, c. 60, § 4, both real and personal
property might be held for the use of an unincorporated religious
society. Corporations under the act of 1860 (chapter 360) could take
gifts and devises in trust or otherwise. Trusts for common schools
in perpetuity were allowed, and the trusts were not invalid for want
of a trustee or donee. Trusts for the benefit of "Friends." Laws
1878, c. 209; also, Laws 1880, c. 337; also, the membership corpo-
rations law, under which almost any kind of a charitable institution
can be formed. The English system in relation to charitable trusts
and uses was overthrown in this state by legislative enactment, and
not from the nature of things, or of the condition of our institutions
or form of government. The legislature having the right to devest
the courts of the state of the cy-pres powers of the English chan-
cery courts, it could reinvest them with those powers and control
over gifts for charitable purposes. It could re-enact the statute of
Elizabeth, or create a new statute, so that a testator could devise his
property to individuals, or corporations, or both, for charitable uses.

The counsel for the plaintiffs contends that the gift for founding
"Graves Home for the Aged" is void, and that the remedial act
of 1893 has reference only to the indefiniteness or uncertainty of the
beneficiaries named in the will, and that all gifts for such uses are
still subject to the provisions of the Revised Statutes in relation to
uses and trusts, perpetuities, and the limitations of future estates.
In other words, the gift must be valid under the laws of this state;
and, if it is, it will not be deemed invalid if the beneficiaries are in-
definite and uncertain. In my opinion, such a construction would
defeat the beneficial purpose of the act. It was not the design or in-
tention of the framers of the law to only relieve gifts or grants to
charity when the beneficiaries were indefinite or uncertain, but they
intended to embrace within the act all gifts for charitable uses
whether to corporations or individuals. Gifts for charitable uses to
corporations were valid, and did not offend the statute of perpetui-
ties, and grants to them were equally valid. Public policy did not
demand, from the condition of the law relating to charitable trusts
and uses, a further enactment as to them. The legislature fully
realized that the community had suffered by defeating the real in-
tention and design of charitably disposed persons more than could
possibly accrue from a more humane and liberal policy towards such
uses. The books were full of cases exhibiting curious instances of
varying opinions in the judicial mind. The cases where the worthy

givers gave to noble and benevolent objects and uses were legion, but, before they could find their final resting place, the ultimate designs of the donors were frustrated and defeated, because the gifts offended the unyielding rules of law.

The creators of this act knew that the great majority of those who had been inclined to amass fortunes, large or small, to be devoted to charitable purposes, and who have labored with that end in view throughout a long life, do not want to leave them to institutions founded and established by others, but prefer to have the charities bear their name, and remain a lasting monument to their memories, or to support a certain class of persons who are the direct objects of their charity. The makers of the statute knew that very many charitable trusts failed because they were incapable of being executed by judicial decree, and in some cases even where the trustees were willing to execute the trust. (Can a corporation execute a discretionary power better than an individual?) They were aware of the numerous cases of gifts to individuals as trustees in perpetuity, and of the indefiniteness and uncertainty of the persons designated as beneficiaries in the gift or grant, whereon the statute of perpetuities was impressed, and how they fell, as violative of the statute of uses and trusts in real property and powers in trust, and from an undue suspension and limitation. There has been hitherto no judicial construction of the full scope and meaning of these remedial acts. In People v. Powers, 147 N. Y. 104, 41 N. E. 432, an action in relation to a trust, where the testator died in 1882, it was held that it failed because the beneficiaries were indefinite and uncertain, and that the provisions of the will must be considered under the law as it existed at the death of the testator, and consequently not affected by chapter 701 of the Laws of 1893. But in Dammert v. Osborn, 140 N. Y. 43, 35 N. E. 407, it is said:

"There is another and more recent statute, that has some application to this case; and it is the last expression of the legislative will on the subject, and discloses what our public policy is in regard to such bequests. By chapter 701 of Laws of 1893, entitled 'An act to regulate gifts for charitable purposes,' it is enacted that no such gift, when valid in other respects, under the law of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries in the instrument creating the same; that in such cases, when a trustee is named, the title shall vest in him, and, if no person is named as trustee, then the title shall vest in the supreme court, and in all cases of bequests to charitable uses, where the beneficiaries are not definitely designated, that court shall have full control; and it shall be the duty of the attorney general to enforce the trust and represent the beneficiaries. The statute indicates an intention on the part of the legislature to enforce and uphold charitable bequests not heretofore recognized as valid, and it may be regarded as the first step in the direction of modifying that body of law which this court has built up on the ruins of the system outlined in Williams v. Williams, 8 N. Y. 525. The result which the Second division of this court was constrained to reach in a recent case of public importance no doubt had some influence in creating the sentiment which is embraced in the law. * * * When a court of equity obtains jurisdiction, and all the facts are before it, * * * it may, and generally does, adapt the relief to the situation existing at the close of the litigation."

In the case at bar the testator drew his will September 15, 1893, died July 21, 1896, and the same was admitted to probate September

5, 1896, and this action was commenced in January, 1897. The remedial act became a law May 13, 1893. The real property law became a law, with the approval of the governor, May 12, 1896. Section 93 of that act has been referred to and set out in full for the purpose of showing the legislative will on the subject of charitable uses. It must be presumed the testator knew the law, and intended to make his gift a valid one, within the remedial act. Chwatal v. Schreiner, 148 N. Y. 683, 43 N. E. 166.

Bearing in mind, apart from legislative provisions, a court of equity has no power to transfer the legal title from one person to another, by the mere force of its decree; also having in mind the causes and influences, together with the lamentable history, of gifts and grants for charitable purposes,—we are prepared to examine the statute, and find out what it means. We should consider, first, the title, "An act to regulate gifts for charitable purposes." It assumes to take care of and control all gifts for the purposes specified. What next? "No such gift when valid in other respects under the laws of this state." What laws? Statutory, in this act. The legislature refers to laws of its own creation, unless otherwise expressed. A bequest or devise under a will must be by a will valid in its execution, and in conformity with the provisions of the Revised Statutes in relation to wills and real and personal property. If, in the instrument creating such a gift, grant, bequest, or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, or devised for such purposes shall vest in such trustees. This plainly shows that the legislature intended and meant that the instrument creating the gift must conform to the statute in its execution, and, if it does, it is valid "under the laws of this state"; and, by force of the statute, uncertainty or indefiniteness of the beneficiaries will not invalidate the gift; and as the act recognizes all gifts for charitable purposes, and assumes to regulate their disposition, it embraces every valid gift for such uses. Section 93 of the real property law provides that the instrument making the conveyance or devise of real property, which is in other respects valid, omits the words "under the laws of this state." Reading the two acts together, we are of the opinion that the legislature refers to the instrument creating the gift or devise, and not to the gift itself, for all such gifts are valid under the remedial acts. The statute vests the title to the property in the trustee, to execute the same, and, if no trustee is named, in the supreme court; and it gives the court no greater title or control over the trust than the trustee.

Can the statute of perpetuities invade the title of the supreme court? Can any other statutes passed before the remedial acts in question be impugned upon, and invade that title and control over gifts for charitable uses? The bequest for founding the home was valid under the remedial act. The enactment gives to the supreme court greater jurisdiction and control over charitable uses than the English courts ever had. The act is a very great improvement over the English system in relation to charitable uses. That system was defective wherein it permitted the courts to control the gift not in

strict accordance with the donor's true design. It has been supposed by many that these remedial acts have given to the courts the cy-pres powers of the English court of chancery, and the compilers of the statute have so treated it. It is true the act is framed and founded upon many of the principles within those powers and the statute of Elizabeth; yet we are not prepared to hold that the cy-pres doctrine has been fully adopted. Judgment is ordered in accord with the findings and decision heretofore made.

Judgment accordingly.