WILLARD PARKER and Another, as Executors, etc., of WILLARD PARKER, Appellants, *v.* BENJAMIN F. BUTLER, as Trustee, etc., of WILLARD PARKER and Others, Respondents.

*Powers and duty of the court in the construction of wills.*

Although in the construction of wills, when a court is sure that it knows what a testator meant, it has a right and it is its duty to subordinate the language to such intention, and it may even reject, supply and transpose words and limitations to get the correct meaning, nevertheless it has no power to insert clauses in a testator's will, made necessary by the changes of circumstances in his property, which have occurred subsequently to the execution of the will, and for which he has not provided.

APPEAL by the plaintiffs, Willard Parker and another, as executors, etc., of Willard Parker, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 15th day of November, 1893, upon the decision of the court after a trial at the New York Special Term.

*E. L. Stimson*, for the appellants.

*A. H. Joline*, for Butler, trustee, etc., respondent.

*W. P. Butler*, for the other defendants, respondents.

VAN BRUNT, P. J.:

This action was brought to procure a construction of the will and codicil of Dr. Willard Parker, who died in New York city on the 25th of April, 1884, which will and codicil were admitted to probate on the 31st of May, 1884. The will and codicil in question were executed by the testator respectively on the 5th of January, 1883, and the 11th of January, 1883.

Some time prior to the execution of the will and codicil in question the testator and his brother, Grenville Parker, were jointly interested in a large amount of West Virginia land. The said Grenville Parker died intestate on the 10th of May, 1881, leaving him surviving his widow, Eliza A. Parker, and his daughter, Emily T. Parker, his only child and heir at law. In July, 1881, the said Eliza A. Parker was duly appointed sole administratrix of the estate of said Grenville Parker by the courts of West Virginia, he being

at his decease a resident of said State. On the 14th of February, 1882, an agreement was entered into between said Eliza A. Parker and Emily T. Parker, and Eliza A. Parker, as administratrix, etc., and the testator, for the sale to said testator of all the right, title, interest and estate which said Grenville Parker had owned or possessed in and to said lands for the sum of $18,000, which was to be paid out of the first moneys received by him from the sale and disposal of the lands, properties and interests described in said contract. The contract also contained a clause giving said testator the right to make payment of the consideration money without waiting for a sale of the lands as provided in said contract. The testator had also other properties in West Virginia, and a considerable estate in New York, Massachusetts and elsewhere.

By the general scheme of the will the testator divided all his property into two general classes, each distinct from the other — his West Virginia property of every sort whatsoever treated in the sixth clause, and his general estate considered in the other portions of the will.

The said sixth clause, so far as it is necessary to recite the same for the purposes of this opinion, is as follows :

" *Sixth.* As I am now owner of various lands and contracts for the purchase or sale of lands, leases, mortgages and equitable interests and rights in and to lands situated at West Virginia, and as I may hereafter acquire other such lands in said State before my death, and as I wish to make a special disposition of the same different from that which I hereafter make of my other estate ;

" Now, therefore, I hereby give, devise and bequeath all the property and estate, real and personal, above described which I shall own, or be entitled to dispose of at my death, unto my son-in-law, Benjamin F. Butler, of Scarsdale, Westchester county and State of New York, as trustee in and upon the following trusts and conditions, that is to say : "

Then follows a power to sell, to lease, to collect rents and issues, to discharge taxes and assessments, to pay for insurance, to erect and repair buildings, to sink mines and construct roads, bridges, railroads, canals, etc., to purchase adverse rights or claims, and to purchase adjoining lands. Power is also given, for the purpose of rais-

ing money for any of the above objects, to mortgage said lands, or any part of them, from time to time. And the trustee is authorized, if there be any surplus, whether of income or of proceeds of sale, or of insurance, after satisfying the purposes mentioned in said clause, to distribute the same in certain proportions.

By his codicil to said will the testator provided as follows:

"*First.* Inasmuch as the property disposed of in the sixth clause of said will is intended to include, among other things, all rights which I may have in, or in relation to, certain lands and premises situated in the State of West Virginia, which were formerly owned by me, in common with my deceased brother, Grenville Parker, his interest in which said lands, his widow (both in her individual right and as his administratrix) and his only surviving daughter have, by an instrument duly executed between us and bearing date the fourteenth day of February, eighteen hundred and eighty-two, agreed to sell and convey to me (with other property) for the agreed price of $18,000, now, therefore, to prevent any misunderstanding in relation thereto, I hereby direct that the trustee named in the said sixth clause of my said will, after paying out of the proceeds of the sales of the trust property in said clause devised to him such taxes, assessments or other charges or incumbrances as he may think proper to be first paid thereout, shall use and apply the next moneys received by him from the said trust property (whether from rents, proceeds of sales or otherwise) in and towards the payment and satisfaction of the said sum of eighteen thousand dollars, or so much thereof as shall then remain unpaid, according to the provisions of the above-mentioned agreement, and I hereby direct that if my said brother's interest in so much of said lands as are in West Virginia shall not have been already conveyed to me prior to my death, such conveyance shall be made to the trustee named in said sixth clause, or to his successors in the trust, he and they being hereby designated as the persons entitled to demand such conveyance under said agreement.

"*Second.* And inasmuch as I have also, within a few years last past, expended sundry sums amounting in the aggregate to $30,000 or more, in and about the management and preservation of my said properties in West Virginia, by reason whereof my general estate has been diminished by that amount, now, therefore, I do hereby

further direct that the said trustee named in the said sixth clause of my said will, after he shall have paid in full the $18,000 mentioned in the next preceding clause of this codicil (or so much thereof as shall remain unpaid at my death), shall use and apply the next moneys received by him from the said trust property (whether from rents, proceeds of sales or otherwise) in and towards refunding to my executors the sum of thirty thousand dollars aforesaid, which shall thereupon be and become part of my personal estate; and if the said trustee shall not so refund that sum on or before the expiration of two years after my death, then he shall also pay interest on the same, or on so much thereof as shall then remain unpaid from that date until paid, at the rate of five per cent per annum.

"But if, before my death, I shall receive from my said property in West Virginia any sum or sums (over and above the current expenses of preserving and maintaining the same) more than sufficient to satisfy my obligations under the above-mentioned agreement relating to the interest of my deceased brother, Grenville Parker, then the excess over that amount so received by me shall go to diminish the sum of $30,000 which the said trustee is to refund to my executor, as in this clause is provided.

"*Third.* I direct that no distribution of the proceeds of the property devised or bequeathed in the said sixth clause of my said will shall be made to any of my descendants as in said sixth clause provided until the two sums mentioned in the first and second clauses of this codicil are first paid. But nothing herein contained shall interfere with the discretion given to the said trustee in relation to applying the proceeds or avails of such trust property to such uses as he shall deem necessary or proper for the preservation, management or judicious development or improvement of said trust property in whole or in part; all of which expenditures shall, if he think proper, take precedence of the payments in the first and second clauses of this codicil provided for."

On the 14th of May, 1883, the testator paid off the $18,000 provided for by said contract, although he had received from sales of West Virginia property comparatively a small sum in cash, and received a deed from said Emily T. Parker therefor, the said Eliza A. Parker having previously thereto died intestate.

It is now claimed by the appellants that it is manifest from the

will and codicil that it was the intention of the testator to charge the trust estate devised by the sixth clause of the will with the purchase price mentioned and contained, viz., $18,000, and to save the testator's general estate from any diminution by its payment. And this claim is founded upon the provision which the testator makes in his codicil in reference to the repayment to his estate of the $30,000 which had been disbursed by him in connection with his adventures in West Virginia lands. It would certainly seem to have been the testator's intention to indemnify his general estate for the disbursements made by him on account of these West Virginia lands, which is evidenced by the provisions referred to, with respect to the repayment of the $30,000. But although in the construction of wills, when we are sure that we know what the testator means, we have a right and it is our duty to subordinate the language to such intention, and the court may even reject words and limitations, supply them and transpose them to get at the correct meaning, nevertheless the courts have not as yet inserted clauses in a testator's will made necessary by the change of circumstances in the testator's property, which have occurred subsequently to the will, and for which the testator has not provided.

In reference to this question, arising upon the construction of this will, it is difficult to see that the testator has anywhere so provided ; and it is only by the interpolation of such provision bodily into the will that any such construction can be given to the codicil.

It is argued upon the part of the appellants that, by the provisions of the codicil in reference to the payment of the $18,000, he has not stated to whom that sum is to be paid, and that, as he has not provided that it should be paid to the vendors, the fair interpretation from the general character of the codicil is that he intended it to be paid to the personal representatives of his estate, if he paid it before his death, in order that the special design of indemnifying his general estate as against the West Virginia disbursements may be carried out.

It seems to us, however, that a very cursory examination of this codicil shows that no such construction can be put upon it, and that such was not the intention of the testator, but that the sole payment which the trustee was authorized to make was to the vendor of the West Virginia property, and to nobody else.

He provides that the trustee, "after paying out of the proceeds of the sales of the trust property in said clause devised to him, such taxes, assessments or other charges or incumbrances as he may think proper to be first paid thereout, *shall use and apply* the next moneys received by him from the said trust property (whether from rents, proceeds of sales or otherwise) in and towards the payment and satisfaction of the said sum of $18,000, or of so much thereof as shall then remain unpaid."

This is a clear and express direction to the trustee that he shall use the surplus of the proceeds of the sales of all the property in West Virginia to the liquidation of this debt; not, as required by the contract, to use only the proceeds realized from the sales of the land mentioned in the contract, but as soon as he is put in funds from any source, to liquidate this indebtedness up to the amount which might remain due. To whom? Clearly not to himself, nor to any other branch of his estate, but to the vendors.

If there was any doubt in regard to this, the last clause of this paragraph of the codicil would seem to set it at rest. He contemplates the possibility before his death of having paid this $18,000, and that these lands may have been conveyed to him, because he says: "I hereby direct that, if my said brother's interest in so much of said lands as are in West Virginia shall not have been already conveyed to me prior to my death, such conveyance shall be made to the trustee named in said 6th clause, or to his successors in the trust."

What does the testator mean by this clause, if he did not contemplate the possibility that he might acquire the title before he died? Now, he could only acquire the title by paying the $18,000. It is clear that his intention was that either he or his trustee, as soon as it could be done, should acquire that title without waiting for the realization of the $18,000 from the sale of these particular lands. His trustee is to pay so much as remains unpaid. He is to get the title if the testator has not gotten it before. Now, to say that the testator did not contemplate doing what he did, viz., acquiring the title to this property before his death, seems to us absolutely to ignore the plain and explicit language of the testator where he speaks of just that contingency. It is idle to say that he did not mean payment to the vendors, but meant payment to his personal

representatives. If he did so intend he has certainly used language which is absolutely inconsistent with any such idea. He having contemplated the acquisition of this property and the payment of the whole amount in his lifetime, can it be said that there was any intention by this codicil to direct the payment of any portion of that $18,000 to anybody if he had already paid it himself? In the next clause of his codicil he is equally explicit as to what he means. After having recited the fact that he had expended $30,000 in and about the management and preservation of his other properties, he proceeds: "Now, therefore, I do hereby further direct that the said trustee named in the said sixth clause of my said will, after he shall have paid in full the $18,000 mentioned in the next preceding clause of this codicil (or so much thereof as shall remain unpaid at my death), shall use and apply the next moneys received by him from said trust property," etc. What did he mean by "so much thereof as shall remain unpaid at my death?" Did he mean so much as should remain unpaid to himself or to the vendors of the property? It is clear that he did not mean so much as might remain unpaid to himself; but it was the expression of the intention which had been clothed in apt language by the previous paragraph of the codicil, viz., that the trustees were to liquidate this debt first, if any debt existed, and then apply the proceeds of the sales to the payment of the $30,000 to his personal representatives. And then, as if to put at rest any possible imputation that whatever might have been paid by him upon this $18,000 should be added to the $30,000 which was to be paid to his general estate, he continues: "But if, before my death, I shall receive from my said property in West Virginia any sum or sums (over and above the current expenses of preserving and maintaining the same) more than sufficient to satisfy my obligations under the above-mentioned *agreement relating to the interest of my deceased brother, Grenville Parker,* then the excess over that amount so received by me shall go to diminish the sum of $30,000, which said trustee is to refund to my executor, as in this clause is provided." Here it appears that the testator had in mind the relation between the $18,000 and the $30,000, and he has deliberately provided that if he received in excess of the $18,000 from his property in West Virginia the surplus was to go to diminish the amount of $30,000 to be refunded. But he says not one word to

the effect that, in case he does not receive the whole $18,000 from his West Virginia estate, any portion of it which he may have paid is to go to increase the $30,000, which is to be refunded to his executor.

Now, it is sought by the construction asked for to add to the testator's will a clause requiring the addition of this $18,000 to the $30,000, which the testator has declined to do for himself. It is asked : " To whom then was the testator referring and to whom were the payments of the $18,000, or the part thereof unpaid at his death, to be made ? Undoubtedly to the general estate."

But when the testator wanted to provide for a payment to his general estate, he had no difficulty in finding adequate language to express his meaning. The only possible point in support of the construction claimed by the appellants is in the use of the word "also" in the second clause : " And inasmuch as I have *also* within a few years last past expended sundry sums." But this word can have no such force and effect as is claimed for it. Suppose he had recited in the prior clause that he had paid $18,000 and taken a deed, and then " I have also paid $30,000," and directed his trustee to reimburse his general estate for the $30,000, could the general estate have lugged in the $18,000 under the short word " also ? " We think not. We think that if any weight is to be attached to this word, it is that there is a distinction being made between the $18,000 and the provision for the repayment to his general estate of the $30,000. It is evident that he had them both in mind. He chose to provide for the reimbursement of the one and not of the other ; and this being the plain construction of the language used this court will not make another will for him.

There is another question presented as to the construction of this will arising upon the following facts. Included in the West Virginia lands mentioned in the contract of February 14, 1882, and subsequent deed from Emily T. Parker on the 14th of May, 1883, was an interest in the Gyandotte tract. A. A. Low and William H. Aspinwall's devisees also had an interest in this tract ; and on the 11th of December, 1883, the testator and his fellow-owners conveyed this tract in fee to A. A. Low, John A. Aspinwall and Benjamin F. Butler. They executed a declaration of trust of the same date, which the appellant's claim shows that they took the tract in trust for sale. But where any such intention is found from

one end of the declaration to the other we have been unable to discover as will be subsequently seen. On the 6th of January, 1890, Low, Aspinwall and Butler, as trustees, by a deed sold and conveyed said tract for $460,000, the purchase money being partly paid to the trustees under the deed and the balance secured by a mortgage, and many thousand dollars, part of said purchase money, have been paid over by the trustees under the deed and declaration to the defendant Butler as trustee under the sixth clause of the will, and the question involved is: Does the sixth clause of the will operate on proceeds of land in West Virginia transferred by said testator under said deed and declaration of trust?

In the determination of this question it is necessary to consider very briefly the declaration of trust, it being assumed to be the creation of a trust for the purposes of a sale by the trustees. The deed is a simple deed in the short form obtaining in West Virginia. By the declaration of trust, after reciting that the grantors in the deed were interested in the lands in question, and that there was litigation in respect to the same, and that it was deemed necessary in order to facilitate the further and final settlement of the title, that the legal and equitable title to said real estate should be transferred to and vested in the trustees, the trustees covenanted and agreed to accept and hold the said real estate, and all such right, title and interest therein as was vested in and held by the grantors in the deed at the time of the execution thereof, in trust for and to the only proper use, behoof and benefit of the parties of the second part (the grantors), their heirs and assigns forever, according to the right, title and interest which they respectively have therein.

The declaration then proceeds:

"And the parties of the first part (the trustees) further covenant and agree at all times to make and execute in due form of law, all such conveyances, contracts, agreements and letters of attorney of and in relation to said real estate or any part or parts thereof as the parties of the second part or a majority in interest of them, their heirs and assigns, may, in writing, direct, and to do any and all acts in relation to said real estate and every part thereof which the parties of the second part, their heirs and assigns, may, in writing, direct.

"But it is expressly agreed and understood by and between all

the parties, that every conveyance, contract, agreement and power of attorney executed by the parties of the first part of and in relation to said real estate, or any part of it, shall be valid and effectual for the purposes intended by it, as between the parties to this deed and declaration of trust, and the person to or with whom such conveyance, contract, agreement or power of attorney is made, whether the same be directed by the parties of the second part as herein provided or not, it being the intention of all the parties that every person purchasing and taking conveyances of the said real estate, or any part of it, from the said parties of the first part, or their agent and attorney in fact, shall have all such right, title and interest in and to the same, as the parties of the first and second parts now have, or which the parties of the second part had at the date of their said deed to the parties of the first part."

This is the only provision in this whole declaration where there is the slightest reference to any sale by these trustees. And all that this provision was inserted for evidently was to assure the title to all persons who might take under this declaration, relieving them from the necessity of proving a direction to convey. It may have been in the contemplation of the parties that these trustees should sell, and undoubtedly the persons taking title from them would get a good title notwithstanding the failure to direct on the part of the beneficiaries under the trust. But the trust is absolutely silent as to any authority upon the part of the trustees to convey, as between themselves and their *cestuis que trust*, except as they might be directed. Now, under these circumstances, how is it possible to say that there was any intended conversion of this estate from realty into personalty, or that it should be considered as money? The testator may not have had a legal title to the estate in question at the time of his death. But that he had an equitable interest therein seems to be beyond controversy; and that that was the true interest is borne out by the examination of the deed and the declaration of trust. It may be somewhat difficult to determine exactly what the testator parted with under these two instruments. But that he still retained an interest in this property seems to be beyond all question. And it is not necessary to refer to the statutory provisions of West Virginia in aid of this construction. If it was an equitable

interest in land, it is clearly embraced within the language of the sixth clause where he speaks of being the owner of lands, and contracts for the purchase or sale of lands, leases, mortgages and equitable interests and rights in and to lands in West Virginia. And all this property thus described he gives to his trustee. And even if this interest should be described as personal property, he has included it in the language of his will. He says, after having described the property as above stated, "Now, therefore, I hereby give, devise and bequeath all the property and estate, real and personal, above described which I shall own or be entitled to dispose of at my death." He did not intend to leave anything out — realty, contracts for the purchase or sale of lands, leases, mortgages, equitable interests, rights and personal property pertaining thereto. All were to pass to this trustee. And this is in harmony with the declaration in his will that he desired to make a special disposition of this class of property from that which he made of his general estate and to establish a trust in respect to this particular property. And in his codicil he says that his will was intended to include all rights which he might have in or in relation to certain lands and properties situate in the State of West Virginia which were formerly owned by him in common with his deceased brother, Grenville Parker, whose interest in the lands in question was then under contract to be conveyed to the testator.

It is clear, therefore, that he intended to remove all ambiguity, and that he construed the sixth clause himself to mean all rights which he might have either in or in relation to any of these lands. It certainly would be an entire denial of the explicit language of the testator to take out of the operation of the will rights in relation to the very lands which he says are intended to be included therein. We cannot see how any such construction can be adopted. As already observed, it is immaterial whether the interest under the deed and declaration of trust is to be considered as personalty or an equitable interest in land. It was his plain intention to include within the terms of the will and codicil every interest of every kind which might be the result of or belong to these West Virginia lands.

We might call attention to the provisions of the will in reference to the $30,000 in aid of this construction where he authorizes the

application of any sums which might be received from his West Virginia property during his lifetime to the diminution of the sum of $30,000 which the trustee was to refund to his executors. There is no provision whatever for the transfer to his general estate of any portion of the proceeds of West Virginia lands, except for the one purpose of the repayment of the $30,000 which was in the codicil provided to be refunded; another indication that he did not intend that any portion of the proceeds of these lands should go into the general estate, but should go to his trustee.

Upon the whole case, therefore, we are of opinion that the construction given to this will by the court below was the correct one, and the judgment should be affirmed, with separate bills of costs to the respondents to be paid out of the estate.