ROBERT B. HULL and Others, as Executors of and Trustees under the Last Will and Testament of JOSEPH WILD, Deceased, Respondents, *v.* CHARLES PEARSON and Others, Appellants, Impleaded with THE LONG ISLAND BAPTIST ASSOCIATION, Respondent, and Others.

*Will — surrounding circumstances considered in its construction where there are latent ambiguities — bequest to an orphanage not in existence at the testator's death, but which was to be founded by an existing corporation.*

A testator, by his will, provided as follows : " I give and bequeath to the various societies, associations or corporations named below, for the general purposes or uses of said societies, associations or corporations, except as I shall in any case otherwise particularly indicate, the sums hereinafter specified, and I direct my said executors to pay the sum out of my residuary estate to wit:  \*  \*  \*
"To the Long Island Baptist Association the sum of five thousand dollars ($5,000).  \*  \*  \*
"To the Orphanage, founded or to be founded by the Long Island Baptist Association, under whatever name the same may be organized or incorporated, the sum of ten thousand dollars ($10,000).  \*  \*  \*
" And I direct that the said several legacies or bequests herein made shall be paid over to the respective treasurers or other financial officers of the said several societies, institutions or corporations for the time being, and I do further direct that, in case the name or names of any of the same should not be correctly given herein, that no legacies shall lapse or fail on that account, but that the amount thereof may be paid over to the society, institution or corporation designated or intended so to be, notwithstanding any misnomer thereof."
At the time of the death of the testator no orphanage had been founded or incorporated by the Long Island Baptist Association.
Upon the trial of an action brought to obtain a judicial construction of the will, it appeared that the decedent was a prominent member of the Baptist church and had been a messenger to several of the regular annual meetings of the Long Island Baptist Association, a corporation, at which a plan for the creation of an orphanage had been the subject of discussion; that a small fund had been subscribed towards the project, and a standing committee on orphanage appointed; that the testator had become very much interested in the proposed orphanage, and had stated that he wished to contribute through the regular organized incorporated body, and that he had made provision for the orphanage in his will, two of the executors named in which were members of the orphanage committee of the association.
*Held*, that the Long Island Baptist Association was entitled to receive the $10,000 legacy bequeathed to the orphanage.
CULLEN, J., dissented.
It was considered by GOODRICH, J., that in construing a will, in which there are latent ambiguities of such a character that the intention of the testator cannot

be absolutely ascertained from the will itself, the court is not confined to the instrument itself, but may consider the circumstances which existed at the time of the making of the will;

That in order to effectuate the intention of the testator to make a bequest to the orphanage, the clause in question would be construed to read, "to the Long Island Baptist Association, for the Orphanage founded or to be founded by *it,* under whatever name the same may be organized or incorporated, the sum of $10,000," and that the Long Island Baptist Association, or its treasurer, who was the custodian of the orphanage fund, was entitled to receive the bequest;

That the Long Island Baptist Association, which was incorporated under the Benevolent and Charitable Act (Chap. 319 of the Laws of 1848), and whose certificate of incorporation stated, as one of its objects, the efficient prosecution of benevolent work, was authorized to take the legacy given to the orphanage, which was comprehended within the meaning of the word "benevolent;"

That any doubt respecting the validity of the bequest was removed by chapter 701 of the Laws of 1893, "An act to regulate gifts for charitable purposes."

APPEAL by the defendants, Charles Pearson and others, from so much of a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 30th day of July, 1898, upon the report of a referee, as adjudges that the defendant, The Long Island Baptist Association, is entitled to receive the legacy of $10,000 bequeathed by Joseph Wild to the orphanage founded or to be founded by The Long Island Baptist Association; also from so much of said judgment as directs payment to The Long Island Baptist Association of said legacy, or any part thereof; and also from such portion thereof as directs payment to the attorney for the said The Long Island Baptist Association of the sum of $500 as an additional allowance.

*Henry G. Atwater,* for the appellants.

*Frank Harvey Field,* for the Long Island Baptist Association, respondent.

GOODRICH, P. J. :

This appeal involves the construction of the last will of Joseph Wild, who died September 3, 1896, leaving a large estate consisting entirely of personal property. The testator, after directing the payment of his debts, bequeathed to his wife a life estate in certain

personal property, and then gave the residue of his property to his executors, in trust, to pay a number of annuities with which we are not concerned, and also a number of specific legacies to various charitable, benevolent and religious institutions. The clauses which have direct reference to the question involved read as follows :

" 3rd. I give and bequeath to the various societies, associations or corporations named below, for the general purposes or uses of said societies, associations or corporations, except as I shall in any case otherwise particularly indicate, the sums hereinafter specified, and I direct my said executors to pay the same out of my residuary estate, to wit :   *   *   *

" To the Long Island Baptist Association, the sum of Five thousand Dollars ($5,000).   *   *   *

" To the Orphanage founded or to be founded by the Long Island Baptist Association, under whatever name the same may be organized or incorporated, the sum of Ten thousand dollars ($10,000).   *   *   * And I direct that the said several legacies or bequests herein made shall be paid over to the respective treasurers or other financial officers of the said several societies, institutions or corporations, for the time being; and I do further direct that in case the name or names of any of the same should not be correctly given herein, that no legacy shall lapse or fail on that account, but that the amount thereof may be paid over to the society, institution or corporation designated or intended so to be, notwithstanding any misnomer thereof.   *   *   *

" *Ninth.* In this my Will I have disposed of my estate among those of my kin with whom it has been my pleasure to share my income and also among such religious and charitable objects as it has been my pleasure from time to time to render assistance with my means and with a careful regard to all persons and institutions who might reasonably have claims upon me, and it is therefore my will and I direct that in case any legatee or beneficiary under this my Will shall contest the same, such person or persons so contesting shall receive nothing whatsoever under this Will, or out of my estate, and the legacy or legacies herein named to them, are in each and every such case hereby revoked and annulled, and I hereby direct that this provision shall apply not only to the person or persons who shall formally contest this Will, but also to any and every other person who shall aid or abet such contest, or take any part therein."

This action was brought for the construction of the will. One clause of the relief demanded in the complaint reads: "3rd. That it be determined whether the Long Island Baptist Association should receive the legacy of Ten thousand dollars ($10,000) to the Orphanage founded or to be founded by it, hereinabove referred to and set forth, or whether the said legacy fails and falls into the residuary estate."

Issues having been formed by the service of answers on behalf of some of the parties in interest, the action was referred to a referee who made the report upon which a judgment was entered directing that the Long Island Baptist Association was entitled to receive the legacy in question, and directing the executors to pay said legacy to said association, in accordance with the terms of the will. The appeal is taken from this judgment.

The appellants' counsel contends that the bequest in the 3d paragraph, which reads: "To the Orphanage founded or to be founded by the Long Island Baptist Association, under whatever name the same may be organized or incorporated, the sum of Ten thousand dollars ($10,000)," is invalid.

There are certain elementary principles in the construction of wills, a statement of which will assist our conclusion. Some of them are so elementary as hardly to need citation of authority.

The basic rule is that the intention of the testator must be sought for and derived from the instrument itself, and carried out, provided it infringes no established rule of law.

In construing a difficult provision, reference may be had to other provisions of the will for the purpose of ascertaining the intention of the testator, and effect must be given, if possible, to all of its provisions, and no clause is to be rejected and no interest intended to be given is to be sacrificed on the ground of repugnancy, when it is possible to reconcile the provisions supposed to be in conflict. (*Taggart* v. *Murray*, 53 N. Y. 233.)

Where there are two possible constructions which may be given to a clause, that construction will be given which will sustain the intended devise rather than one that will defeat it. (*Roe* v. *Vingut*, 117 N. Y. 204.)

In *Du Bois* v. *Ray* (35 N. Y. 162, 167) the court said: "Applying the doctrine of these cases to the clause of the will now

under consideration, it is plainly our duty to give such a construc‑ tion to the particular language used in it (if the same can consist‑ ently be found to have a doubtful or a two-fold meaning) as will render the disposition made by the testator of his property effectual and consistent with his intention, rather than by following a literal reading of it, thwart his intentions, and render nugatory and void the limitation."

In *Crooke* v. *County of Kings* (97 N. Y. 421, 434), FINCH, J., said : "It is our duty to harmonize and retain, so far as possible,. all the provisions of the will ; to reject no words of its maker except upon imperative necessity ; and to seek for all of them some force and operation." A similar doctrine is announced in *Parker* v. *Butler* (76 Hun, 240).

In *Weeks* v. *Cornwell* (104 N. Y. 325), EARL, J., said (pp. 336,. 337): " So in the construction of written instruments, courts will scrutinize the language used, and however confused, uncertain and involved it may be, will give it that construction which has in its favor the balance of reasons and probabilities, and will act upon that. The intent of a testator may sometimes be missed, but such is the infirmity of language and human judgment that such a result is sometimes unavoidable."

The court, however, is not confined to the instrument itself, but may consider the circumstances which existed at the time of the making of the will, provided there are latent ambiguities in it, that is, ambiguities of such a character that the intent of the testator can‑ not be absolutely ascertained from the will itself. Mr. Jarman says : " Though it is (as we have seen) the will itself (and not the intention, as elsewhere collected) which constitutes the real and only subject to be *expounded,* yet, in performing this office, a court of construction is not bound to shut its eyes to the state of facts under which the will was made ; on the contrary, an investigation of such facts often materially aids in elucidating the scheme of dis‑ position which occupied the mind of the testator. To this end, it is obviously essential that the judicial expositor should place himself as fully as possible in the situation of the person whose language he has to interpret ; and guided by the light thus thrown on the testa‑ mentary scheme, he may find himself justified in departing from a strict construction of the testator's language, without allowing

' conjectural interpretation to usurp the place of judicial exposition.' "
(1 Jarm. Wills [6th ed.], 428.)

The Harvard Law Review, for November, 1898, contains an instructive reference to a recent case in Pennsylvania, tracing the growth of the principle which permits parol evidence to explain ambiguities in a will. The Supreme Court of that State (*In re Root's Estate*, 40 Atl. Rep. 818) was construing a will which gave " unto my nephew, William Root, the legacy or sum of $1,000." It appeared that the testator had a true nephew, William Root, and that his wife had a nephew of the same name. Evidence was offered to explain this will, and the Orphan's Court admitted evidence of the surrounding circumstances and the declarations of the testator that the wife's nephew was the person intended. The Supreme Court reversed the decision on the ground that where one person exactly meets the description, parol evidence is not admissible to show that another person not exactly meeting the description was intended. In an exactly parallel case in England (*Grant* v. *Grant*, L. R. [5 C. P.] 727), Lord BLACKBURN, speaking for the court, distinctly repudiated the doctrine of the Pennsylvania case; and a similar result was reached in *Patch* v. *White* (117 U. S. 210), where the court recognized that in cases of latent ambiguities evidence is always admitted to show the condition of the testator's family and estate, and the circumstances by which he was surrounded at the time of making his will. It was also held, in *Finlay* v. *King's Lessee* (3 Pet. 346, 377), MARSHALL, Ch. J., writing, that "the intent of the testator is the cardinal rule in the construction of wills; and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail; although in giving effect to it some words should be rejected or so restrained in their application as materially to change the literal meaning of the particular sentence."

With these principles in view, it is well to state the circumstances indicating the interest which the testator has expressed in the orphanage in question. He was a prominent member of the Baptist church, and had been a messenger from the Greenwood Baptist Church, one of the beneficiaries named in the will, to several of the regular annual meetings of the Long Island Baptist Association, and especially to the one which was held in October, 1894, one month

before the execution of his will. Some years before, a little girl had sent to the association five dollars as a contribution toward an orphanage, and this was put by itself, forming a fund to which, from time to. time, other moneys were added, so that the fund at the time of the trial amounted to more than two hundred dollars. The subject of an orphanage had been discussed at several annual meetings of the association, which the testator attended, and a standing committee on orphanage was appointed in 1893, of which two of the executors named in the will, Robert B. Hull and Charles H. Dutcher, were members. This committee made a report upon the subject in 1894, and the subject was largely discussed at that meeting, to which, as already stated, the testator was a messenger. He had also conversed with his pastor, Dr. Hull, with regard to the orphanage, and Dr. Hull had recommended the orphanage to him as an object worthy of his beneficence. The project of building had not been taken up by the association, as it was then engaged in the erection of a building known as the "Baptist Home," but there is evidence tending to show that the association intended to establish an orphanage in connection with its other work. It was doubtless for this reason that the testator used the words an "Orphanage founded or to be founded by the Long Island Baptist Association," for we may assume that the testator knew that the will would not take effect until his death, and, therefore, provided for the orphanage whether it should be founded before or after his death.

The testator became much interested in the subject and stated to Dr. Hull that it had been his habit to contribute personally to such institutions, but that he felt that he had made a mistake and henceforth wished to do it through the regularly organized bodies; and with respect to the orphanage, that he wished to do it through the regularly organized incorporated body. He also spoke to Mr. Jones, another trustee of the association, expressing his interest in the orphanage and his desire to see it completed before his death, stating on one occasion that while he had made provision for the orphanage in his will, he would add more if the board would only begin the work of erecting a building. Force must be given to the fact that the testator, about the time of the execution of the will, had expressed his intention to contribute thereafter to such institutions through the regularly organized bodies, and we may well believe that

the Long Island Baptist Association was one of the bodies which he had in mind in making this statement.

The evidence establishes beyond controversy that it was the desire of the testator to assist the enterprise of establishing an orphanage to be organized in connection with and through the Long Island Baptist Association, and to leave it a bequest; and that, in pursuance of that desire, he had executed a will containing a bequest of $10,000 to the orphanage to be founded by the said association. I think that we may assume that this intention is shown by the language of the will itself. If it were necessary, we might refer to the testator's knowledge of the action of the association, in whose deliberations he had participated. Further emphasis is given to this conclusion by the fact that the testator, in the will which was executed shortly after the annual meeting, named three executors, one of whom was a member of the orphanage committee of the association, and that by a codicil made in March, 1896, he substituted in place of one of the executors named in the will, Mr. Dutcher, another member of such orphanage committee. These facts manifest an intimate and trusting relation with the members of the association, and particularly with those whose membership of the orphanage committee allied them closely with the project to which the testator made the bequest under consideration.

Assuming then, as we do, that it was the intention of the testator to leave a specific bequest of $10,000 to the orphanage in question, it is our duty to discover, if possible, a method of effectuating that intention. There is no corporation corresponding with the definition of the bequest, and hence the money would fall into the residuary estate unless we give force to other clauses of the will. One of them provides that the several bequests to charities "shall be paid over to the respective treasurers or other financial officers of the said several societies, institutions or corporations for the time being." The treasurer of the Long Island Baptist Association is the custodian of the orphanage fund already referred to, and payment to him is in effect a payment to the financial officer having the orphanage fund in charge. I am impressed with the belief that the testator intended that if the orphanage was in existence at the time of his death, under any name, its bequest should be paid over to it; and if it had no corporate existence that the bequest should be paid to

the Long Island Baptist Association or its treasurer, and that he meant to provide for either contingency, and that in any event the association should receive the bequest for the establishment and maintenance of the orphanage, which he knew was one of the plans and purposes of the association.

In the well-considered opinion of Mr. Justice SCRIPTURE, at the Onondaga Special Term, in *Allen* v. *Stevens* (22 Misc. Rep. 158), he said (p. 172): " The court may punctuate, and add, omit, or substitute words, in order to give effect to the actual intention appearing from the instrument as a whole, as by adding commas and relative pronouns, changing 'and' to 'or,' correcting plural into singular, transposing, inserting and omitting." (Citing cases.)

" To alter the language of a testator is evidently a strong measure, and one which, in general, is to be justified only by a clear explanatory context. It often happens, however, that the misuse of some word or phrase is so palpable on the face of the will, as that no difficulty occurs in pronouncing the testator to have employed an expression which does not accurately convey his meaning. But this is not enough; it must be apparent, not only that he has used the wrong word or phrase, but also what is the right one, and if this be clear, the alteration of language is warranted by the established principles of construction." (1 Jarm. Wills [6th ed.], 503, 504.)

Under this principle it is only needful to transpose some of the words of the will and add a word, to make it read : " To the Long Island Baptist Association, for the Orphanage founded or to be founded by *it*, under whatever name the same may be organized or incorporated, the sum of $10,000." It does not seem to me that violence will be done to the will by such changes. Indeed it corresponds in effect with another provision of the will relative to the Greenwood Baptist Church, where the testator, after giving a bequest of $3,000 to that church, added another bequest, " And to the said Greenwood Baptist Church, for the support and care of the poor belonging to the church, the sum of three thousand dollars ($3,000), which sum shall be paid over to or placed at the disposal of the deacons of the said church, for the purposes aforesaid."

I am unable to distinguish this case from *Lefevre* v. *Lefevre* (59 N. Y. 434) where an opinion was delivered by ALLEN, J. The court, per FOLGER, J., expressly concurred in the opinion of Judge

ALLEN upon the proposition about to be stated, although it differed with him upon another proposition not involved in the case at bar. The court held that a misnomer or misdescription of a legatee or devisee, whether a natural person or a corporation, will not invalidate the provision, if either from the will itself, or evidence *aliunde*, the object of the testator's bounty can be ascertained. The action was brought to obtain the construction of the will of William C. Lefevre, which contained a provision giving a portion of the estate to the "Home of the Friendless in New York." There was no corporation of that name, but "The American Female Guardian Society" claimed the bequest. In the special act of the Legislature incorporating the society the object and purpose were declared to be to "establish and maintain houses of industry, and homes for the relief of friendless or unprotected children," and it had established eleven industrial schools in different parts of the city of New York. It had erected a building in East Thirteenth street in which two of its schools were maintained, which had been known and called "Home for the Friendless," and this name was cut in a marble slab over the door of the building. It was shown by evidence that the testator a few months before his death visited the institution, showed much interest in it, frequently referred to his visit, and spoke of the manner in which the educational work of the charity was conducted; that he always called and spoke of it as the "Home for the Friendless," and that he had it in his mind and called it by that name on the day of the preparation and execution of his will. Speaking for the court, ALLEN, J., said (p. 440): "A stronger case could not well be made for relief against the consequences of a misnomer of an intended beneficiary under a will. Of the intention of the testator to make the claimant the object of his bounty and to contribute of his substance to the charities administered by it, there can be no doubt upon the evidence. A misnomer or misdescription of a legatee or devisee, whether a natural person or a corporation, will not invalidate the provision or defeat the intention of the testator, if, either from the will itself or evidence dehors the will, the object of the testator's bounty can be ascertained. No principle is better settled than that parol evidence is admissible to remove latent ambiguities, and when there is no person or corporation in existence

precisely answering to the name or description in the will, parol evidence may be given to ascertain who were intended by the testator.. A corporation may be designated by its corporate name, by the name by which it is usually or popularly called and known, by a name by which it was known and called by the testator, or by any name or description by which it can be distinguished from every other corporation; and when any but the corporate name is used, the circumstances to enable the court to apply the name or description to a particular corporation and identify it as the body intended, and to distinguish it from all others and bring it within the terms of the will, may, in all cases, be proved by parol."

*Matter of Wehrhane* (40 Hun, 542), decided by the former General Term of the first department, is a still closer case. It related to a will which contained the following bequests :

" To the Children's Aid Society, city of New York, five thousand dollars.

" To the Newsboys' Lodging House, city of New York, five thousand dollars."

It was proved that the Newsboys' Lodging House was not incorporated, but was a department of the Children's Aid Society, and that its management was under the same board which controlled and managed the Children's Aid Society, although separate officials acted and reported to that board. The court used language which has singular applicability to the case at bar (pp. 544, 545): "It is true that the society receives a donation also, and this may be said to be conclusive of the intent of the testator to make but one donation to the society, no matter what different forms or modes of administration it might have adopted; but this does not necessarily follow, for the testator had a decided interest in the Newsboys' Lodging House, designated by him, and may well have given the sum mentioned for particular application to it, while the legacy to the parent society was intended for its general work throughout the city, to be used in all the various modes in which aid could be extended to children, either through lodging houses or otherwise. The evidence, indeed, shows that he was in the habit of contributing especially to the Newsboys' Lodging House, and was a constant subscriber to both the Children's Aid Society and the lodging house, after visiting the latter, and, therefore, knew of their relations to each other. For

these reasons the decree of the surrogate should be reversed as far as it relates to the legacy to the Newsboys' Lodging House, the legacy there to be declared valid and directed to be paid to the Children's Aid Society."

This brings us to the question as to the power of the Long Island Baptist Association to take the legacy in question. The association was incorporated under chapter 319 of the Laws of 1848, formerly known as the Benevolent and Charitable Act. Corporations organized thereunder were authorized to receive real and personal estate for the purposes of their incorporation. The certificate of this association states among its objects "the erection of houses of worship, the efficient prosecution of missionary, benevolent and Sunday school work and the establishment and strengthening of Baptist churches throughout Long Island." An orphanage falls within the meaning of the word "benevolent," as used in the certificate, and we entertain no doubt of the power of the association to take the legacy.

The policy of recent legislation in this State is towards upholding as far as may be bequests to such institutions. In *Dammert* v. *Osborn* (140 N. Y. 43) O'BRIEN, J., intimates that chapter 701 of the Laws of 1893, entitled "An act to regulate gifts for charitable purposes," resulted from the public dissatisfaction occasioned by the decision which the Court of Appeals felt constrained to make in the famous case of *Tilden* v. *Green* (130 N. Y. 29).

Section 1 of that act reads as follows: "No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses, which shall, in other respects, be valid under the laws of this State, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant, bequest or devise there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee, then the title to such lands or property shall vest in the Supreme Court."

If there were any doubt respecting the validity of the bequest in question, such doubt would be removed by this statute, which was in operation when the will was executed, and it might be our duty

to give force to its provisions, even if it were necessary to suggest a resort to an appropriate proceeding to be instituted to enforce the trusteeship of the Supreme Court. But we think no such doubt exists and that no such resort is necessary. We prefer to put our decision on the grounds already stated.

The judgment must be affirmed, with costs.

BARTLETT and HATCH, JJ., concurred in result; CULLEN, J., dissented; WOODWARD, J., absent.

CULLEN, J. (dissenting):

I doubt whether the provisions of the will of Joseph Wild, under review, can be construed as a gift to the Long Island Baptist Association for its own use. But I think, with some hesitation, that their validity may be upheld under chapter 701 of the Laws of 1893, entitled "An act to regulate gifts for charitable purposes." From the overthrow of *Williams* v. *Williams* (8 N. Y. 525) until the enactment of that statute, the only way in this State (with a few exceptions) to make a gift for charitable purposes has been by a bequest or devise to a corporation, because the beneficiaries of the charity were deemed too indefinite for their rights to be capable of enforcement. By the act of 1893 it is provided that a gift to religious, educational, charitable or benevolent uses, if, in other respects, valid under the laws of the State, shall not be deemed invalid by reason of the indefiniteness or uncertainty of the beneficiaries; and that if no person be named as trustee, the title to the lands or property shall vest in the Supreme Court. I think there can be no doubt of the intention of the testator or the proper construction of his will. He intended to give $10,000 to an orphanage founded by the Baptist Association, if one was so founded at the time of his death, or if not then founded (which was the case), then for the foundation of such an orphanage. Had the testator merely given the bequest for the foundation of an orphanage for the Baptist Association, it would have been clearly valid under the statute of 1893, and the property would have vested in a trustee, or in the Supreme Court, for the purposes of the trust. This is practically what the testator has done; and the fact that he has made the gift only in the alternative that such an orphanage should not

have been founded at the time of his demise does not affect its validity. It is urged that the gift is to a specific legatee, to wit, a corporation thereafter to be incorporated; and that as the will provides for no period of time in which the incorporation may be effected, the bequest contravenes the provision of law that personal property must vest absolutely within two lives in being. I think this is too narrow a construction of the bequest. The essence of the gift was not to a corporation, but to a charitable use, to wit, an orphanage for the Long Island Baptist Association. The language is, under whatever name organized or incorporated. Had the association, at the time of the testator's decease, itself, directly, and not through the medium of another corporation, maintained an orphanage, I think there could have been no doubt that such orphanage could be fairly said to have been organized within the meaning of the will and the association have taken the legacy. If it be assumed that it was the intention of the testator that a particular corporation should be incorporated to receive the legacy, the appellants concede that had he directed the incorporation to have been effected within two lives in being the legacy would have been good (*Burrill* v. *Boardman*, 43 N. Y. 254); and I concede that prior to the statute of 1893 the bequest would have been void for failure to provide such a limitation. I may also concede (though as to this there may be doubt, *Williams* v. *Williams, supra,* and *Bird* v. *Merklee,* 144 N. Y. 544) that the statute against perpetuities applies to gifts to charitable uses, and that the act of 1893 has not taken such gifts without that statute. But the reasoning which has led the courts to hold that there must be an express direction in a will for the incorporation of the legatee within two lives in being, seems to me not to obtain to its full extent since the act of 1893. As before that act a gift for charitable uses could only be made to a corporation, until the corporation was incorporated and came into being the property vested in the next of kin, and the possibility of the subsequent creation of a corporation during a term not measured by lives, of course prevented the absolute ownership of the property during such period. But this is not now the case. A devise for charitable uses, even though there is no corporation, vests the title at the time of the testator's death either in a trustee named in the will, or in the Supreme Court. There is, therefore, no

suspension of the absolute ownership of the property, and no restraint on the power of alienation for any period, except, of course, so far, as in every trust of this character, the trust property is solely applicable to the purposes of the trust. We have no decisions on the question as to how, under the act of 1893, the courts would administer general trusts for charities. I should be inclined to the opinion that when no trustee is named the court might direct the organization of a corporation for the administration of the fund. If this is so, certainly the testator might do the same. There is no provision of the bequest that in terms offends against the statute as to perpetuities. It provides neither for the maintenance of the principal intact, nor for the accumulation of income. The whole principal sum could properly be at once expended for the construction or purchase of an orphanage building. Immediately on the testator's death and the election of the association to accept the legacy, there was imposed on the association a trust to apply it to the foundation of an orphanage, and if the testator intended that the orphanage should be held by a separate corporation, then to incorporate such a corporation under the laws of the State. Before the act of 1893 such a trust could not have been enforced, because the corporation not being in existence there was no person in being with standing to enforce such a trust, but now, in case the trustee fails to fulfill the trust, the Attorney-General is authorized to bring an action to enforce it. The present case is to be distinguished from *Booth* v. *Baptist Church* (126 N. Y. 215). That case arose before the statute of 1893, but I assume that a great part of the reasoning of that opinion would still be in point since the act referred to. In the *Booth* case the testator gave a large portion of his estate to certain trustees, who were directed to apply to the Legislature for the incorporation of the John Guy Vassar Orphan Asylum. As to this gift it was said by Judge FINCH: " The devisee and legatee was not in existence. The will contemplated its future creation, but by an independent authority, which neither the testator nor his executors could control, and which might for fifty years or forever refuse an act of incorporation. During all that period the power of alienation and the absolute ownership would be suspended, for no person could convey a perfect and absolute title." In other words, the Legislature might refuse the special act of incorporation, and the

specific character and name of the legatee, the latter of which was to commemorate the testator's bounty, were essential, if not controlling, elements of the testator's intent; and it may well be that if the legatee was to bear a different name or be of a different character, the gift would not have been made. But in the present case, if the testator intended a corporation at all, he contemplated one which required no application to the Legislature or action on its part, but whose incorporation was authorized by general statutes existing at the time of testator's decease, and substantially as much a matter of right as the purchase of the land on which the orphanage might be situated. To restate the thought which is in my mind: Before the act of 1893 a trust for charity was void, and the existence of a proper legatee could alone save it. Since that act a trust for charity is good, and a direction that the subject of the gift shall be held by a corporation solely relates to the administration of the charity and should not be allowed to defeat the trust otherwise valid; and a trust to create a corporation for the administration of the charity, where the corporation is one that citizens may incorporate as a matter of right under existing law, does not suspend the power of alienation. I am, therefore, of opinion that if the testator's scheme contemplated that a new corporation should be effected to take the gift (which I deny, believing that his sole will was that it should be applied to the particular charitable use, and that the personality of the legatee was immaterial), that fact would not render the bequest invalid.

The decree should be modified so as to adjudge that the legacy be paid to the Baptist Association upon trust, to found an orphanage.

Judgment affirmed, with costs payable out of the fund.