Matter of the Accounting in the Estate of ANNA E. HOCHHALTER, Deceased.

(Surrogate's Court, Bronx County, February, 1919.)

Wills — construction of — latent ambiguity — who entitled to bequest — intention of decedent as to legatees — legacies — residuary estates.

   The decedent who made a bequest to " Catherine Lambert (cousin) now or formerly residing at Garden Prairie, Illinois," had no cousin answering this description when the will was made, but a second cousin survived, " Catherine Lampert," whose married name was Homan, and she had resided at Garden Prairie. The decedent also had a cousin, the mother of Catherine L. Homan, who died before the will was made, and her first name was Johanna. The legacy was claimed respectively by the surviving children of Catherine L. Homan and the surviving children of Johanna, who contended that her middle name was Catherine. *Held,* that there was a latent ambiguity *dehors* the will and that decedent intended to designate Cathe-

Surrogate's Court, Bronx County, February, 1919.   [Vol. 106.

rine L. Homan as the legatee and that her next of kin were entitled to the bequest.

*Held,* also, that by a bequest to an unincorporated association, the "Frauen Verein, attached to and connected with" a certain Evangelical Lutheran church, said church was intended as the legatee.

PROCEEDINGS on the judicial settlement of the accounts of executors.

Mingle, Finkelstein & Ehrich, for executors.

Harold J. Roig, for Frauen Verein and Evangelical Lutheran St. Lucas Church.

Nathan H. Stone, for Jacob Lampert and others, claimants.

J. Sidney Bernstein, for next of kin of Catherine Lampert.

Frederick A. Stroh, special guardian for infants and incompetent parties.

John A. McEveety, special guardian for unknown parties, etc.

SCHULZ, S. Upon this accounting proceeding a question arises as to the intent of the testatrix with reference to the disposition of a share of her residuary estate.

By her last will and testament she directs her executors to divide all the rest, residue and remainder of her estate, both real and personal, into two equal parts, and after disposing of one of such parts she gives, devises and bequeaths the other to a large number of persons, among whom is one designated as "Catherine Lambert (Cousin), now or formerly residing at Garden Prairie, Illinois."

The undisputed fact is that at the time when the will was made the decedent had no cousin who would answer the description of the legatee above stated. There was living at that time, however, a second cousin whose name had been Catherine Lampert who had married about 1878, and whose name thereafter was Catherine Lampert Homan. She had resided in Garden Prairie for some years, and thereafter removed to Elgin, Ill., and died July 26, 1913. The decedent also had a cousin named Lampert whose first name it is conceded was Johanna, and as to whose other name there is a dispute. Those claiming under her contend that her middle name was Catherine. She was the mother of Catherine Lampert Homan, resided at Garden Prairie, Ill., for at least a part of her life and she died at Garden Prairie on September 3, 1909.

On behalf of her surviving children, a claim is made that the decedent intended to designate her by the description heretofore referred to; and for the children of Catherine Lampert Homan, it is urged that the latter was the person designated as the legatee in question. The will therefore presented a latent ambiguity arising *dehors* the instrument and a hearing was had. *Brown* v. *Quintard,* 177 N. Y. 75; *Matter of Van Vliet,* 181 App. Div. 879, and cases cited.

All of the witnesses who testified were interested. Two of them were the children of Johanna or Johanna Catherine Lampert and they it was who maintained that she was known as "Johanna Catherine Lampert" and also as "Hanna Katharina Lampert." They were unable, however, to produce any writing, document or letter showing that this name had ever been made use of by their mother, and it does not appear that the decedent ever visited their mother at Garden Prairie or that the latter or any of her children ever came to the city of New York.

On behalf of the children of Catherine Lampert Homan there is no dispute about the fact that their mother before her marriage was named Catherine Lampert, and that she had resided for some time at Garden Prairie, Ill. One of her daughters, Elizabeth B. Bowman, testified that she, the witness, was a buyer for a dry goods house in Chicago and came to New York frequently. She has produced a post card and a letter which a disinterested witness has testified were in the manner and style of handwriting of the decedent, which are addressed to her, and in which the decedent as a salutation uses the words " My Dear Bessie " and which she subscribes " Cousin Annie " and " Cousin Annie H." respectively. In addition to this a memorandum book is produced by the executors and the handwriting identified as being in the manner of that of the decedent, in which the address of Mrs. Bowman appears, all of which in my opinion establishes the fact that the decedent and Mrs. Bowman were acquainted with each other.

A certificate of death was offered and received which evidences the fact that Johanna or Johanna Catherine Lampert was buried under the name of Johanna Lampert. While this is, of course, not conclusive on the question of her name, I think it is some evidence of the name by which she was known among her intimates.

Mrs. Bowman testifies that she herself resided up to her fifteenth year at Garden Prairie, and thereafter at Elgin, Ill.; that she knew her grandmother because she lived on the farm adjoining the one upon which her grandmother lived and that her grandmother was always known as Johanna and never as Johanna Catherine Lampert. In the course of the testimony evidence was admitted as to personal transactions between Mrs. Bowman and the decedent. Subse-

quently all of this testimony was stricken out, and I have not considered it in arriving at the conclusion hereinafter stated.

The fact that the decedent referred to the legatee as her cousin and not her second cousin, I do not think of much importance when we consider the testimony that some of the persons mentioned in the will as cousins were also second cousins, and the letter and post card in evidence which also indicate that the decedent did not use the term " cousin " in its strict and correct sense.

It also appears without contradiction that Johanna or Johanna Catherine Lampert died almost four years before the making of the will, whereas Catherine Lampert Homan was still living at that time.

It was agreed that Garden Ferry mentioned in the record is Garden Prairie and that the name which throughout the proceeding appears as " Lambert " and " Lampert," should be " Lampert."

Upon the evidence thus briefly summarized, I reach the conclusion that the decedent intended by the words " Catherine Lambert (Cousin), now or formerly residing at Garden Prairie, Illinois," to designate Catherine Lampert Homan.

A second question arises from the fact that the will of the decedent names as a residuary legatee one " Christina Knodel (*nee* Schwegler) (Cousin), now or formerly residing at Konigsbach, Baden, Germany." The petitioner alleges that the executors have received a document purporting to be a proof of heirship showing the relatives of the decedent residing at " Konigsbach," Baden, Germany, and that the name " Christina Knodel " does not appear, but that there was a Catherine Schwegler who married one Frederick Frankle, and that they believe that the only relative residing at " Konigsbach," Baden, Ger-

many, for whom the legacy could be intended, is the said Catherine Frankle.

No evidence of any kind has been submitted in the matter, and the special guardian appointed to protect the interests of the said " Christina Knodel " objects to a direction that the payment be made to any other person than the said " Christina Knodel," and asks that if her whereabouts cannot be ascertained, the same be paid to the treasurer of the state of New York.

There is nothing before me upon which I could base a finding that Catherine Frankle is the person named in the will as " Christina Knodel," and as there is a serious question as to whether there ever was such a person as " Christina Knodel," and if there was whether she is now living, and if dead who are her next of kin, the persons entitled to such legacy appear to be unknown at this time.

The decree will therefore direct that the executors pay the share of the said residuary estate which, under the terms of the will, is payable to " Christina Knodel," into the treasury of the state of New York for the benefit of the person or persons who may thereafter appear entitled thereto.

With reference to the legacy of $500, as to which the petitioners pray for a construction of the will and codicil of the decedent and which, it is alleged, she attempted to give to the " Frauen Verein, attached to and connected with " the Evangelical Lutheran St. Lucas Church, none of the parties of full age make any contention.  But the two special guardians, one acting for infants and an incompetent and the other for an unknown party, urge, as the interests of their wards demand, that the legacy in question must fail because made to an unincorporated association.  It is conceded that the " Frauen Verein " named in the will

Misc.]   Surrogate's Court, Bronx County, February, 1919.

of the decedent is an unincorporated association, and that if the legacy is made to such association, the result they contend for would necessarily follow. *Murray* v. *Miller,* 178 N. Y. 316; *Fairchild* v. *Edson,* 154 id. 199; *Owens* v. *Missionary Society,* 14 id. 380; *Wait* v. *Society for Political Study,* 68 Misc. Rep. 245; *White* v. *Howard,* 46 N. Y. 144.

The amount of the legacy to which each of the persons represented by the special guardians would become entitled as residuary legatees, if the legacy failed, is very small. It is evident that the decedent was very much interested in the society to which she belonged and which formed a part of the church organization and that she wished the association in question to benefit from her testamentary disposition. If, however, she attempted to do this by a direct bequest to the unincorporated association, the legacy fails notwithstanding the fact that all agree that her intent would thereby be nullified; whereas if she made the bequest to the church, it would be otherwise.

As the decedent was a member of the society, it is fair to assume that she was aware of the fact that it was an unincorporated association, and she was also presumed to know the law. A construction which destroys her testamentary intent should not be favored if the language of the will reasonably lends itself to any other construction which gives it effect.

While the matter is not free from doubt, a careful reading of the will and codicil which taken together constitute the last will and testament of the decedent leads me to the conclusion that under the authorities I am warranted in holding that the intent of the decedent was to bequeath the amount of the legacy in question to the Evangelical Lutheran St. Lucas Church of 233-239 West Forty-second street in the borough of Manhattan (*Matter of Wehrhane,* 40 Hun,

542; affd., no opinion, 110 N. Y. 678; *Hull* v. *Pearson,* 36 App. Div. 224; *Matter of Sliney,* 81 Misc. Rep. 389; *Matter of Isbell,* 1 App. Div. 158; *Matter of Reformed Episcopal Church,* 98 Misc. Rep. 145), and I so determine.

Decreed accordingly.